**David S. HEDDEN, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, of State of Florida, Respondent-Appellee.**

No. 77–1599

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1977.

Robert S. McCain, Fort Lauderdale, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before CLARK, GEE and FAY, Circuit Judges.

PER CURIAM:

David S. Hedden was convicted of murder. After exhausting his state remedies, he petitioned the United States District Court for a writ of habeas corpus, 28 U.S.C. § 2254, on the ground that evidence was introduced at his trial in violation of his rights under the Constitution of the United

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

States. The petition was dismissed. We affirm.

Laisley Minor Crawford disappeared while spraying weed killer on some bushes near his home. His wife reported him missing. Two days later, Crawford's body was found in a nearby river. An autopsy revealed that he had been shot to death.

Chief Investigator Clingenpeel headed the investigation. In its course, he interviewed Richard Van Kennerly, a druggist. Van Kennerly told Clingenpeel that Hedden, an animal lover, had come to him to procure medicine for some opossums and, in the course of filling Hedden's prescription, Hedden told Van Kennerly that Crawford had killed his alligator and that he, Hedden, was going to get him for it. According to Van Kennerly, Hedden further stated that he had ruined one .22 caliber pistol attempting to make a silencer for it but that he had another gun of this sort. The autopsy results indicated that the fatal bullets had been fired into Crawford's body from a small caliber gun probably equipped with a silencer. This information made Hedden Clingenpeel's top suspect.

Clingenpeel went to Hedden's home and requested Hedden and his wife to accompany him to the sheriff's office to give them information that might help solve the case. Upon arrival at the sheriff's office, Hedden was placed in a room apart from his wife, where he remained for approximately an hour. He was not advised that he was a suspect nor was he given Miranda[1] warnings or advice. Chief Investigator Clingenpeel and two other officers interrogated Hedden, following which they asked him to submit to a polygraph examination. When this was concluded, the officers requested that Hedden return to his residence with them for the purpose of securing and surrendering a rifle and pistol he had described. Hedden agreed to do so, and upon his return to his home, gave the weapons to the officers. One of the weapons was a .22 caliber pistol equipped with a silencer. Still without advising Hedden of the fact that he was a top suspect and still without giving

him Miranda warnings, the officers requested his consent to look around the premises. Hedden gave his consent and, in the course of a search of a van owned by Hedden, police discovered a blood-stained blanket which they took into their possession.

After ballistics tests on the .22 caliber pistol delivered by Hedden to Clingenpeel, a search warrant and a warrant for Hedden's arrest were procured. Hedden was subsequently indicted. He moved to suppress the evidence obtained in the consent searches. The motion was denied. At Hedden's trial, the gun and blanket were introduced in evidence over his objections. Hedden was convicted of murder in the first degree and sentenced to life imprisonment.

In this court Hedden urges that Clingenpeel should have advised him of his Miranda rights and that the failure to do so constitutes a violation of his rights under the Fifth Amendment in its intimate relation with the Fourth Amendment. Hedden urges that since he was not properly advised in accordance with Miranda, his consent to search his house and van was illegally obtained, wherefore the searches were unlawful and the introduction of the evidence obtained was unconstitutional.

The application of Miranda is premised on Hedden's assertion that he was in custody and the focus of a criminal investigation when his consents were requested and obtained.

■ We do not need to reach or decide whether Hedden's stationhouse interrogations were of such a custodial nature as to require that Miranda warnings be given in order to validate any admissions or confessions. See Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). This circuit has squarely ruled that a consent to search may be taken from a suspect then in custody who has not been warned and advised in accordance with Miranda. United States v. Garcia, 496 F.2d 670 (5th Cir. 1974). While a state prosecutor who seeks to introduce the fruits of a search made pursuant to a defendant's consent has

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

786

the burden of proof that that consent was voluntarily given and was not the result of duress or coercion, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), such voluntariness is a question of fact to be determined from all the circumstances. This precise issue was presented to the courts of Florida. Hedden does not assert that these courts gave anything less than a full, fair hearing and consideration to this question. The matter may not be reexamined in this court, *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

AFFIRMED.