George Washington SMITH, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitations, Respondent-Appellee.

No. 78–1217
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1978.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

George Washington Smith, pro se.

Edward R. Kirkland, Orlando, Fla. (court-appointed), for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Charles A. Stampelos, John D. Cecilian, Asst. Attys. Gen., West Palm Beach, Fla., for respondent-appellee.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

CHARLES CLARK, Circuit Judge:

George Washington Smith was convicted in a Florida state court for breaking and entering with intent to commit arson. After exhausting his state remedies, he petitioned the United States District Court for a writ of habeas corpus, 28 U.S.C. § 2254. Smith's habeas petition alleged that the state court erred in denying his motion to suppress evidence, on the grounds that the evidence was obtained in violation of his rights under the Fourth Amendment and under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The dis-

trict court dismissed the petition with prejudice. We affirm.

Smith was arrested after being involved in a traffic accident on March 2, 1975. Smith was charged with driving under the influence of alcohol and driving in violation of a restriction on his driver's license, and was taken to the Orange County, Florida jail. The arresting officer testified at the suppression hearing that at the time of arrest, Smith was "singing," "happy-go-lucky," "wasn't worried about any possible penalties," had slurred speech, was flushed and watery eyed, and was incoherent in attempting to describe the accident. At the jailhouse, Smith was given a breathalizer test and scored .30, well above Florida's statutory presumption of intoxication level of .10.

After Smith had been in his jail cell for about four hours, Deputy Sheriff Michael Wooten began an interview with Smith in Smith's jail cell. Officer Wooten informed Smith that the purpose of the interview was to obtain Smith's consent to a search of the truck Smith had been driving at the time of the accident, in order to look for evidence concerning an arson in the area. By the end of Officer Wooten's interview with Smith, which lasted twenty minutes, Smith had signed the consent to search form. The conduct of that interview is the subject of this appeal.

Officer Wooten testified at the suppression hearing that Smith did not appear to him to be intoxicated to a point where his capacity to understand or communicate was affected. After he read Smith "his rights" from a standard card, a brief period of conversation concerning the consent form occurred, and then Smith indicated a desire to see his attorney. At that point, the following colloquy took place between the trial court and Officer Wooten:

THE COURT: Did he say that he wanted to speak to a lawyer, or do you recall exactly?

THE WITNESS: I don't remember exactly, but he said Mr. Kirkland was his attorney.

THE COURT: What was your understanding when he mentioned the lawyer?

THE WITNESS: That he wanted— like to call him and see if he should discuss the form or anything about the form that we had presented to him.

THE COURT: Would you say that in your mind it created an idea that the defendant wanted some legal advice?

THE WITNESS: Yes, to an extent.

THE COURT: Why did you continue your questioning?

THE WITNESS: Like I said, I can't remember who started talking about the form, but the form was brought back up and the form was discussed further.

Wooten testified that although Smith's attorney was not called, Smith signed the search consent, and the evidence was seized from the truck. At the suppression hearing, Smith claimed that his consent was not freely and voluntarily given. He argued that once he mentioned his attorney, the interview should have ceased, and that the failure to immediately halt questioning, coupled with his state of intoxication and custody in jail, rendered the consent involuntary.

The trial court denied the motion to suppress. Smith then pleaded nolo contendere, reserving the right to appeal the suppression ruling, and was sentenced to ten years' imprisonment. On appeal the Florida appellate court affirmed without opinion, with one judge filing a dissenting opinion in which he argued that Smith's consent was not voluntary. *Smith v. State*, 344 So.2d 867 (Fla.App.1977). Smith withdrew his application for certiorari to the Florida Supreme Court, and brought this federal habeas action.

In *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Smith's request for habeas relief must be denied under *Stone* unless he can demonstrate that he was not given an opportunity to fully and fairly litigate his claim in the Florida courts. *Hedden v. Wainwright*, 558 F.2d 784 (5th Cir. 1977); *O'Berry v. Wainwright*, 546 F.2d 1204 (5th Cir. 1977).

In *O'Berry*, this court held that *Stone's* "full and fair opportunity to litigate" requirement is satisfied if the state affords a defendant an evidentiary hearing to determine the factual basis for his Fourth Amendment challenge and provides an opportunity for meaningful appellate review by a higher state court. 546 F.2d 1219. *O'Berry* further noted that "*Stone* only requires that the State provide an *opportunity* for full and fair adjudication of Fourth Amendment claims. *Id. Caver v. State of Alabama*, 577 F.2d 1188 (5th Cir. 1978).

■■■ In the case at bar Smith was given a full and fair opportunity to press his Fourth Amendment arguments in the Florida courts. The factual basis of Smith's Fourth Amendment claim was explored by the state trial judge at the suppression hearing. The arresting and interrogating officers were examined and cross-examined by both attorneys and the trial court. The trial judge discussed the voluntariness issue with counsel and found that the consent was voluntary. On appeal, the dissent was addressed exclusively to the voluntary consent issue, indicating that the appellate court also considered the Fourth Amendment claim. Having twice pressed his Fourth Amendment claim before Florida courts, Smith's habeas petition runs squarely into the interdiction of *Stone*.

This result is·not altered by the fact that Smith's claim is based largely on the interrogating officer's failure to cease questioning once Smith mentioned a desire to see his attorney. If Smith's imprisonment were the result of a *confession* obtained after he asked to see his lawyer, this court would not be barred by *Stone* from considering, in this habeas petition, whether the state had violated *Miranda's* command that "If the individual states that he wants

an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. at 474, 86 S.Ct. at 1628.[1] No Fifth Amendment rights are at issue here, however. Smith's conviction is not the result of self-incriminating statements made to police, but the result of physical evidence seized from his truck. As this court stated in *United States v. Garcia,* 496 F.2d 670, 675 (5th Cir. 1974):

> In a fifth amendment context a defendant's statements, in and of themselves, present the potential constitutional evil. For purposes of the fourth amendment, however, it is an unreasonable search that must be condemned, not the use of a defendant's statements proving consent to a search. A search and seizure produces real and physical evidence, not self-incriminating evidence. Our task under the fourth amendment is to test the reasonableness of a search and exclude evidence procured unreasonably.

*Miranda* warnings are not constitutional rights in themselves, but are merely standards designed to safeguard the Fifth Amendment privilege against self-incrimination. *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). A consent to search is not a self-incriminating statement; "[i]t is not in itself evidence of a testimonial or communicative nature." *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir. 1977). *See Schmerber v. California,* 384 U.S. 757, 761–64, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966); *Fisher v. United States,* 425 U.S. 391, 408–14, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

The failure of the police to halt questioning once Smith mentioned his attorney, then is relevant only with regard to the Fourth Amendment issue of whether Smith's consent to search was voluntarily given. Under *Schneckloth v. Bustamonte,*

412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the failure to cease questioning would be a factor to be considered in "the totality of all [of] the circumstances." 412 U.S. at 227, 93 S.Ct. at 2048. The Florida courts considered Smith's request for an attorney in light of the *Schneckloth* standard. Reconsideration by this court is precisely what *Stone* forbids. *See Hedden v. Wainwright,* 558 F.2d 784, 786 (5th Cir. 1977).

AFFIRMED.

---

1. *Nash v. Estelle,* 560 F.2d 652 (5th Cir. 1977), now pending after reconsideration by this court en banc, is the latest instance in which this court has reviewed, on a petition for habeas corpus, the problem of continued interrogation by police after a suspect in custody has asked for a lawyer. *Nash,* and prior cases dealing with the problem, involved self-incriminating statements made after the request for an attor-

ney, not consents to search. *See, e. g., United States v. Massey,* 550 F.2d 300 (5th Cir. 1977); *United States v. Priest,* 409 F.2d 491 (5th Cir. 1969).

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.