John T. TUKES, Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary,
Department of Corrections,
Defendant–Appellee.

No. 88–5685.

United States Court of Appeals,
Eleventh Circuit.

Sept. 7, 1990.

Michael J. Doddo, Ft. Lauderdale, Fla. (Court-appointed), for petitioner-appellant.

Richard A. Polin, Asst. Atty. Gen., Miami, Fla., for defendant-appellee.

Before KRAVITCH, Circuit Judge, RONEY *, Senior Circuit Judge, and ALDISERT **, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

John Tukes appeals the denial of the writ of habeas corpus by the district court, which adopted the report and recommendation of the magistrate. Arguing that the fruits of a search of his home should be suppressed, Tukes contends that his consent to the search was coerced and involuntary and obtained in violation of his right to have counsel present. He further argues that the jury that convicted him was selected by the prosecutor in an intentionally discriminatory manner. We conclude, however, that Tukes's claims fail on the merits;

therefore, we affirm the district court's denial of relief.

BACKGROUND

While investigating a double homicide, police were told that Tukes had been seen recently at the scene of the shooting. When Detectives Venturi, Remy, and Barraga[1] went to Tukes's house, a woman answered the door and, in response to questioning, said that Tukes was at home. Tukes came to the door and agreed to talk to the police, but said he wanted to straighten out some matters first. The police asked if Tukes had a gun, and when he admitted that he did, the police asked Tukes if he would turn it over to them. He agreed. The firearm was not the murder weapon.

The police waited inside the house while Tukes went into his bedroom and sorted through his papers. There were three women present, and Tukes gave some documents, apparently deeds or titles, to one of the women, instructing her to sell the property and saying, "I am going to have to get lawyers." Detective Venturi asked Tukes why he wanted a lawyer, and informed him that he was not under arrest, that the police would like him "to voluntarily come [sic] downtown." Tukes acquiesced, but before he left, he consented to a search of his garage and car. He was driven in a police car to the police station where Detective Parmenter proceeded to interview him in an interrogation room measuring six by eight feet. Parmenter testified that the other investigators did not inform him of Tukes's statement at his home that he was "going to have to get lawyers."

Parmenter read Tukes the standard police department *Miranda* form because Tukes told the detective that he could not read or write. Although Tukes stated that he understood his rights, he refused to sign the waiver of rights form. This exchange was not tape recorded. Tukes then provid-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

1. Officer Barraga's name is variously spelled throughout the pleadings and record of this case. We adopt the spelling used by the court reporter in the suppression hearing in state court.

ed an exculpatory statement from which he did not deviate despite the detective's continued interrogation for one and a half to two hours. At the end of that session, Tukes agreed to initial a consent form permitting the police to search his house for evidence of the crime.[2]

Although Parmenter testified that Tukes was free to go at any time, Tukes was not told he was free to go, nor was he free to wander around the police station at pleasure. At deposition, Parmenter testified that after Tukes gave the consent he said he wanted to leave the police station. Parmenter, rather than permitting Tukes to go, asked him if he had left anything out of his statement, and then proceeded to reinterrogate Tukes. At the suppression hearing, however, Parmenter denied so testifying at deposition, and denied the substance of his prior sworn testimony.

Tukes remained at the police station and was moved to another interrogation room where he was left alone for an hour and a half. Meanwhile, police searched Tukes's house and discovered ammunition and a pistol, wrapped in a towel splattered with what appeared to be blood. While forensic technicians examined the gun and towel, Tukes remained at the police station. When he said he was hungry, police officers brought food into the station for Tukes. Finally, in the late afternoon, having been at the police station all day, Tukes was formally placed under arrest and told he was being charged with murder. He invoked his right to counsel.

Tukes was indicted on two counts of first degree murder, one count of armed robbery, and one count of possession of a firearm during the commission of a felony. The state trial court denied his motion to suppress the evidence of the ammunition, pistol, and towel, finding that the "statements were freely and voluntarily given,

freely and voluntarily went to the station [sic], that the waiver to search form was signed freely and voluntarily." The court reached no express legal conclusion about whether Tukes's initial statement that he was going to have to get lawyers and Venturi's discouraging response implicated Tukes's right to counsel once he was in custody.

Tukes was convicted on all four counts, and he appealed his conviction to the Third District Court of Appeal, raising the same three issues he urges to this court. The state appellate court affirmed his conviction without opinion. *Tukes v. State*, 507 So.2d 1110 (Fla.Dist.Ct.App.1987).[3]

## STONE V. POWELL AND FOURTH AMENDMENT CLAIMS ON COLLATERAL REVIEW

The state argues that this court need not and cannot reach the merits of Tukes's claims relating to the suppression of the evidence because they are fourth amendment claims, which are barred from collateral review by the federal courts if fully and fairly litigated in the state courts. *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see also Agee v. White*, 809 F.2d 1487 (11th Cir.1987); *Morgan v. Estelle*, 588 F.2d 934 (5th Cir. 1979).[4]

First, we must decide whether Tukes's claims, as they relate to the validity of his consent and his right to a lawyer, are fourth amendment claims. Tukes seeks the same remedy for both claims: the suppression of evidence obtained by the police during the consent search of Tukes's house. If Tukes's consent was invalid, the consent search was invalid. Similarly, if the consent was obtained by police after Tukes invoked his right to counsel, the consent and the search conducted under it were invalid because invocation of the right

---

2. Although the record does not disclose the total amount of time Tukes was at the police station before he gave consent to the search, he had been interrogated no longer than two hours when he initialed the consent form.

3. Tukes brought no collateral state proceeding, and none was necessary as Tukes elected to bring in federal habeas corpus only those claims

he had presented to the state courts on direct appeal.

4. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

to counsel should cut off further interrogation. In either case, Tukes seeks the same remedy that he would have sought had the police obtained evidence with a defective warrant or no warrant at all. If these claims allege a violation of the fourth amendment, we may not consider them on federal habeas corpus review unless they were not fully and fairly litigated in the state courts.

*Coerced Consent*

█ The Supreme Court has identified the fourth and fourteenth amendments as the bulwarks against admission of evidence obtained by the state through coerced consent to a search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 221–22, 228, 242–43, 93 S.Ct. 2041, 2043, 2045, 2048, 2055–56, 36 L.Ed.2d 854 (1973). Although in this case the fourth amendment concern is raised by way of an objection to the manner in which the police obtained the consent, nevertheless the objection remains one premised on the fourth amendment, i.e., that the search was unreasonable because it was based on consent that was not knowingly and voluntarily granted.

Significantly, this is not a case where the admission of a confession itself is the source of objection. A coerced confession is unreliable. *Stone v. Powell,* 428 U.S. at 496–97, 96 S.Ct. at 3053 ("A confession produced after intimidating or coercive interrogation is inherently dubious. If a suspect's will has been overborne, a cloud hangs over his custodial admissions; the exclusion of such statements is based essentially on their lack of reliability.") (Burger, C.J., concurring). Instead, here Tukes seeks the suppression of the fruits of a search. As the Court noted in *Stone v. Powell,* "the physical evidence sought to be excluded is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." 428 U.S. at 490, 96 S.Ct. at 3050. "The primary justification," the Court stated,

"for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights." 428 U.S. at 486, 96 S.Ct. at 3048.[5]

The evidence obtained is reliable, and the deterrent effect of suppressing the evidence, according to the Supreme Court, is "outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." 428 U.S. at 494, 96 S.Ct. at 3052. In this case, where the complaint of coercion goes to the consent under which a search was made by police, we conclude that the doctrine of *Stone v. Powell* applies to bar consideration of the claim in federal habeas if the issue has been fully and fairly litigated in the state courts.

Controlling precedent of this circuit and its predecessor supports this result. In one instance, a habeas petitioner attempted to raise a claim, similar to that now urged by Tukes, that his consent to a search was invalid because obtained while he was in a coercive custodial environment without the benefit of *Miranda* warnings. This court held, on the strength of *Stone v. Powell,* that the "matter may not be reexamined" where the state courts gave the claim a "full, fair hearing and consideration to this question." *Hedden v. Wainwright,* 558 F.2d 784, 786 (5th Cir.1977).

*Consent Obtained in Violation of Tukes's Right to Have All Questioning Stop Once the Right to Counsel Was Invoked*

█ Tukes also contends that his consent was invalid because it was obtained after the police should have ceased questioning him because he had invoked his right to counsel. Arguing that the evidence obtained in the search was the fruit of the poisonous tree of his uncounseled consent, Tukes seeks to suppress the evidence obtained in the search. In effect, Tukes claims that the search was unconstitutional because the consent was invalid as it would not have been obtained had the

5. The Court noted that an alternative rationale for the exclusion of evidence obtained in violation of any constitutional right, including that secured by the fourth amendment, is the preservation of the "integrity of the judicial process." 428 U.S. at 485, 96 S.Ct. at 3048. The Court

stated, however, that the "force of this justification becomes minimal where federal habeas corpus relief is sought by a prisoner who previously has been afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review." *Id.*

police honored Tukes's sixth amendment right.

Federal habeas corpus review of this claim is also governed by *Stone v. Powell.* The Supreme Court struck a balance between the exclusionary rule as a prophylactic device to protect fourth amendment values and the reliability and fairness of criminal prosecutions; the reliability of the evidence obtained by the search is not made suspect by the means of obtaining the consent, and there is no reason to believe that the deterrent effect on police conduct is any greater in this context than in the case of simple coercion.

It bears repeating that this claim only involves Tukes's consent to a search; this is not a case where Tukes complains of a confession obtained by overbearing police officers. *Cf. Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424 (1977) (incriminating statements suppressed); 430 U.S. at 414, 97 S.Ct. at 1247 (*Stone v. Powell* issue not raised before Supreme Court) (Powell, J., concurring); *DeAngelo v. Wainwright,* 781 F.2d 1516, 1518–19 (11th Cir.) ("this circuit specifically has refused to extend *Stone* beyond the fourth amendment context"), *cert. denied,* 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986); *Jarrell v. Balkcom,* 735 F.2d 1242, 1251–53 (11th Cir.1984) (confessions obtained in violation of *Miranda* not barred from consideration in federal collateral proceedings by *Stone v. Powell* doctrine), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

Our decision follows the precedent of this circuit in applying *Stone v. Powell.* In *Smith v. Wainwright,* the petitioner alleged that following his arrest, while concededly in custody, he was interrogated by the police after he had been informed of his rights and had invoked his right to counsel. He granted consent to the police to search his truck. In federal habeas corpus, he claimed that the fruits of the search should have been suppressed because his consent was elicited after he invoked his right to counsel. The Eleventh Circuit's predecessor court, noting that the petitioner's "conviction [was] not the result of self-incriminating statements made to police, but the result of physical evidence seized from his truck[,]" stated that a "consent to search is not a self-incriminating statement; '[i]t is not in itself evidence of a testimonial or communicative nature.'" *Smith v. Wainwright,* 581 F.2d 1149, 1152 (5th Cir.1978) (quoting *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir.1977)). The court concluded that:

> [t]he failure of the police to halt questioning once Smith mentioned his attorney, then is relevant only with regard to the Fourth Amendment issue of whether Smith's consent to search was voluntarily given. Under *Schneckloth v. Bustamonte,* the failure to cease questioning would be a factor to be considered in "the totality of all [of] the circumstances." The Florida courts considered Smith's request for an attorney in light of the *Schneckloth* standard. Reconsideration by this court is precisely what *Stone* forbids. · ·

581 F.2d at 1152 (citations omitted; interpolation in original).

Accordingly, we conclude that the *Stone v. Powell* bar applies to Tukes's federal habeas corpus claim premised on the fruits of a search conducted under consent elicited after interrogation should have ceased on account of the accused's request for counsel.

*Full and Fair Hearing and Consideration in the State Courts*

■ Although the *Stone v. Powell* bar applies to these claims because of their relation to the fourth amendment (as discussed above), the bar is not honored in federal court unless the state courts considered the claims fully and fairly. *Stone v. Powell,* 428 U.S. at 489, 96 S.Ct. at 3050; *Agee v. White,* 809 F.2d at 1490; *Morgan v. Estelle,* 588 F.2d at 940–43; *Caver v. Alabama,* 577 F.2d 1188, 1191–93 (5th Cir. 1978); *Hedden v. Wainwright,* 558 F.2d at 786; *cf. O'Berry v. Wainwright,* 546 F.2d 1204, 1209–14 (5th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977).

For a claim to be fully and fairly considered by the state courts,

where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court. Where, however, the facts are undisputed, and there is nothing to be served by ordering a new evidentiary hearing, the full and fair consideration requirement is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendant's Fourth Amendment claims.

*Morgan v. Estelle,* 588 F.2d at 941 (quoting *O'Berry v. Wainwright,* 546 F.2d at 1213) (emphasis omitted).

The state trial court gave Tukes a full and fair evidentiary hearing relating both to his coerced consent and invocation of counsel claims. The trial court, however, while finding that his consent was given freely and voluntarily, made no explicit findings as to whether Tukes was in custody at the time he gave his consent, nor did the court provide a finding on whether Tukes had made a request for counsel that should have been honored by the interrogating officer. The state trial court also failed to make a factual finding as to whether Parmenter's deposition or trial testimony should be believed.

The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim. *See O'Berry* at 1213; *Morgan* at 941.[6]

This conclusion follows logically from this circuit's decision in *Agee v. White,* 809

F.2d 1487 (11th Cir.1987). In that case the court held that where the state appellate court explicitly addresses only one of petitioner's two fourth amendment claims, *Stone v. Powell* does not bar federal collateral review of the unaddressed fourth amendment claim because it is deemed not to have been fully litigated or considered. *Id.* at 1490 (state court of appeal "ignored" fourth amendment claim). *A fortiori,* where the trial court's findings which are essential to the disposition of the fourth amendment claim are unclear and the state appellate court writes no opinion, we deem the petitioner's fourth amendment claim not to have been fully considered within the meaning of *Stone v. Powell.* Accordingly, we turn to the merits of Tukes's claim that the evidence seized by the police was obtained in violation of his constitutional rights.[7]

We emphasize that state courts are not required to issue lengthy opinions discoursing on the application of federal constitutional law, nor are they required to pen full opinions in place of summary dispositions. Further, we presume that the issues raised by Tukes in fact were given the careful, judicious, and studied attention of the Florida State Court of Appeal. Nevertheless, for purposes of the *Stone v. Powell* bar, where the trial court failed to make clear findings on essential issues, such a summary affirmance is insufficient to deny the petitioner consideration of the merits of his constitutional claim on federal habeas corpus review.

## THE STATIONHOUSE INTERROGATION

### Invocation of Right to Counsel

 In reliance on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68

---

**6.** We appreciate Judge Roney's observation that a summary disposition can meet the requirements of *Stone. Infra* at 518. Had the trial court's findings been clear in this case, then a summary affirmance might have constituted "meaningful appellate review" as required by *O'Berry* and *Stone. O'Berry* at 1213. *Cf. Tackno v. Blackburn,* 571 F.2d 1383 (5th Cir.1978) (per curiam) (affirmance by summary disposition can satisfy *Stone v. Powell* ). There is no indication in *Tackno* that the trial court's findings were not clear.

**7.** Where the historical facts were adequately developed in the state trial court, there is no need to remand to the district court to find facts. Furthermore, the factual findings made by the state trial court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). As we did in *Agee,* we will address the petitioner's claims on the merits as we have determined that *Stone v. Powell* does not bar federal collateral review.

L.Ed.2d 378 (1981), Tukes first argues that the interrogation resulting in his consenting to the search of his home was invalid because it violated his right to have all questioning cease once he requested an attorney. Tukes contends that the statement he made at his home before he left with the police officers ("I am going to have to get lawyers.") constituted a request for counsel that should have been honored by the police.[8] The magistrate rejected that argument. The district court adopted the magistrate's recommendation. We also find Tukes's argument without merit as he was not in custody at the time he gave consent to the search.

Once a prisoner requests the assistance of counsel all custodial interrogation must cease until counsel is provided. *Edwards v. Arizona*, 451 U.S. at 485–86, 101 S.Ct. at 1885–86; *cf. Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (interrogation defined); *cf. Brewer v. Williams*, 430 U.S. 387, 403–06, 97 S.Ct. 1232, 1241–43, 51 L.Ed.2d 424 (1977) (no waiver of sixth amendment right in responding to "christian burial speech"). Furthermore, once a prisoner in custody requests counsel, he may not be interrogated about additional offenses, even if the interrogator does not have actual notice of the prisoner's prior invocation of his right to counsel. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 2100–01, 100 L.Ed.2d 704 (1988); *cf. Illinois v. Perkins*, — U.S. —, — n. **, 110 S.Ct. 2394, 2399 n. **, 110 L.Ed.2d 243 (1990) (Brennan, J., concurring) (no invocation of right to counsel).

The requirement that the prisoner's invocation of the right to counsel cause the cessation of questioning stems from the nature of custody. Where the prisoner is not in custody, the *Edwards* and *Roberson* concerns are not triggered because the non-custodial defendant is free to refuse to answer police questions, free to leave the police station and go home, and free to seek out and consult a lawyer. Once a suspect is arrested and placed in custody, no longer can he leave the coercive environment engendered by police interrogation. Moreover, the prisoner's ability to obtain counsel is significantly restricted once he is in custody. On the other hand, when the suspect is not subjected to custodial interrogation, the danger of coercion is lessened because the suspect is free to quit the coercive environment.

Whether a person is in custody is measured by "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Unless a reasonable person would have understood that his freedom of action was curtailed such that he was effectively "in custody," the suspect should not suffer the coercion associated with being under arrest. *Cf. Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam) (coercive environment of stationhouse interrogation alone does not trigger *Miranda*); *Innis*, 446 U.S. at 299, 100 S.Ct. at 1688–89. In this case, Tukes was not in custody at the time he gave his consent to the search.[9] He voluntarily accompanied the police to the stationhouse, and voluntarily remained there. At the time he consented to the search of his house, his freedom of action had not been restricted: he was free to leave, and no reasonable person would have felt otherwise.[10] Therefore, because Tukes was not in custody, he may not

8. *See Towne v. Dugger*, 899 F.2d 1104 (11th Cir.1990) (collecting equivocal invocation of counsel cases).

9. Tukes's reliance on *People v. Boyer*, 48 Cal.3d 247, 768 P.2d 610, 256 Cal.Rptr. 96 (1989), is misplaced as in that case the suspect was detained when attempting to flee, and once in the stationhouse police evaded the suspect's inquiry as to whether he was under arrest.

10. We note that at the time Tukes consented to the search, he had been at the police station no longer than two hours, and, at that time, had not requested to leave. We also note that he had been read his *Miranda* rights at the time he consented to the search. Although the reading of *Miranda* rights may be considered as some evidence by a reasonable person that he is in custody, in this case, we agree with the magistrate and the district court that Tukes was not in custody and could not reasonably have believed he was.

obtain relief under *Edwards.*[11] Finding that Tukes was not in custody, we need not reach the question of whether his prior equivocal invocation of counsel at his home would have been sufficient to cut off questioning had Tukes been placed in custody.

*Involuntary Consent*

■■■■ Tukes's second argument is that the consent was "coerced and involuntary in that Tukes did not understand his true position as sole suspect, did not have knowledge and understanding of constitutional rights when he signed the form." Appellant's pro se brief at 13. In *Schneckloth*, the Court stated that although consent must not be coerced, there is no requirement that consent be an intentional relinquishment of a known right or privilege, as is the case with waiver of certain constitutional rights under *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) and its progeny. *Schneckloth*, 412 U.S. at 243–45, 93 S.Ct. at 2056–57. A court determines the voluntariness of consent by "analyzing all the circumstances of an individual consent . . ., [and by] careful sifting of the unique facts and circumstances of each case. . . ." [12] 412 U.S. at 233, 93 S.Ct. at 2050.

We find *Schneckloth v. Bustamonte* an instructive starting point. In *Schneckloth*, the Court held that a suspect need not know of his right to withhold consent in order for the consent to be valid. 412 U.S. at 248–49, 93 S.Ct. at 2059. Similarly, we reject Tukes's contention that police are under an obligation to tell a suspect that he is the sole suspect when they seek consent for a search. To require that a suspect be fully aware of the investigator's view of the degree of the suspect's involvement in the offense would contradict *Schneckloth*.

Nevertheless, in considering the voluntariness of consent, the Court noted that the "traditional definition of voluntariness . . . has always taken into account evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights; and the voluntariness of any statements taken under those conditions has been carefully scrutinized to determine whether it was in fact voluntarily given." 412 U.S. at 248, 93 S.Ct. at 2058 (footnote omitted).[13]

---

**11.** We feel constrained to address an argument raised by the state at oral argument regarding the result of giving *Miranda* warnings. At the stationhouse Tukes was read a waiver of rights form, described as a "Standard Miranda Warning Form." The state contends that because Tukes was not in custody when he was read his *Miranda* warnings, had he invoked his right to counsel the police would have been free to ignore that invocation. The state's position is without merit. If the state were free to tell a suspect that he had the right to an appointed lawyer, but could, while continuing to interrogate, refuse to provide the lawyer on the ground that the suspect was not actually in custody, the suspect would be led to believe that no request for counsel would be honored. The coercive effect of continued interrogation would thus be greatly increased because the suspect would believe that the police "promises" to provide the suspect's constitutional rights were untrustworthy, and that the police would continue to violate those rights as they wished, regardless of assurances to the contrary.

**12.** The district court adopted the magistrate's report, which concluded that Tukes's voluntariness claim was barred by *Stone v. Powell.* As a result, the district court did not rule or make findings on the voluntariness of Tukes's consent. Where a complete record, fully developed in state court proceedings, is sufficient for prop-

er examination of the claims on federal collateral review, there is no need for an evidentiary hearing in federal court. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Douglas v. Wainwright,* 714 F.2d 1532, 1554 (11th Cir.), *cert. granted and opinion vacated for reconsideration,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1983), *panel opinion reinstated on remand,* 739 F.2d 531 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *Guice v. Fortenberry,* 661 F.2d 496, 500 (5th Cir.1981) (en banc). Conversely, where the material facts were not developed, the district court should hold an evidentiary hearing.

As the voluntariness issue has been argued adequately on appeal based on the facts found by the trial court in the interest of judicial efficiency we adjudicate the claim without remanding. *See Agee,* 809 F.2d at 1490–95.

**13.** In discussing voluntariness, the *Schneckloth* Court explicitly stated that its voluntariness inquiry in the context of fourth amendment consent took into account "evidence of minimal schooling, low intelligence and the lack of any effective warnings to a person of his rights. . . ." 412 U.S. at 247, 93 S.Ct. at 2058. The Court carefully distinguished between the standard to be applied where full waiver is required and that to be applied to fourth amendment consent.

In *United States v. Mendenhall,* 446 U.S. 544, 558–59, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980) (concurred in by five Justices) a twenty-two year old woman who had not finished high school was temporarily detained by two male police officers at an airport because they suspected her of carrying drugs. Eventually she disrobed in the presence of a female officer and drugs were discovered. The Court, in considering whether her consent to the body search was voluntary, looked to her knowledge of a right to refuse as an "especially significant" indicia of whether the consent was knowing and voluntary. The Court also considered the suspect's age and eleventh grade education, considering those factors as sufficient to show that the suspect was "plainly capable of a knowing consent." 446 U.S. at 558, 100 S.Ct. at 1879.

In deciding whether a suspect voluntarily consented to a search the court should consider:

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and significantly, the defendant's belief that no incriminating evidence will be found.

*United States v. Chemaly,* 741 F.2d 1346, 1352 (11th Cir.1984) (quoting *United States v. Phillips,* 664 F.2d 971, 1023–24 (5th Cir. Unit B Dec. 1981) (footnotes omitted), *reinstated by court sua sponte after vacation for reh'g sub nom. United States v. Bacca–Beltran,* 764 F.2d 747 (11th Cir.1985) (en banc).

In applying these factors, we must place the burden on the state to show that Tukes's consent was voluntary. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045, 2059 (placing burden on state in collateral proceedings as to consent).

Weighing in favor of concluding that Tukes's consent was voluntary is the following: first, Tukes was not in custody and voluntarily accompanied the police to the stationhouse. Second, there is no evidence of coercive police procedure prior to Tukes's consent to the search. Third, Tukes had already exhibited great willingness to cooperate with the police; indeed, he initially turned over one gun to the police at his house and consented to a search of his car and garage. This pattern of accommodation suggests, although it does not compel, the conclusion that Tukes's subsequent consent was the uncoerced continuation of his baseline approach of dealing with the police.[14]

On the other hand, several other factors weigh against the conclusion that Tukes's consent was voluntary. First, Tukes's education and intelligence were low, and the police had an inkling of Tukes's limitations when he informed them that he could not read or write. Second, the police did not inform Tukes of his right to refuse consent.

Although this case is a close one, we conclude, based on the totality of the circumstances, that Tukes's consent was vol-

---

In *Colorado v. Connelly,* the Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). Although that statement may be read to apply the same necessary predicate in the fourth amendment consent setting, given the distinction in *Schneckloth,* we do not understand *Colorado v. Connelly* to overturn existing fourth amendment consent jurisprudence; accordingly, we continue to adhere to the interpretation of voluntary consent in the fourth amendment context set forth in the precedents discussed in the text *infra.*

**14.** Whether or not Tukes believed that incriminating evidence would be found is irrelevant in this case. That factor applies in a case where the suspect freely consents to the search because he believes he has nothing to hide, and is derived from *United States v. Hall,* 565 F.2d 917 (5th Cir.1978). In *Hall,* a suspect, believing he had "nothing to hide," consented to a search of his car trunk which contained a sawed-off shotgun. The suspect's statement when he gave consent that no incriminating evidence would be found was "a factor pointing to the validity of his consent." 565 F.2d at 920. In this case, there is no evidence either way as to whether or not Tukes believed incriminating evidence would be discovered; accordingly, we do not put this factor on the scales.

untary and knowing. There was, therefore, no constitutional error in admitting the fruits of the search against him.

## ALLEGED EQUAL PROTECTION VIOLATION IN JURY SELECTION

 Tukes contends that the prosecutor selected the trial jury in an intentionally discriminatory manner in violation of the fourteenth amendment as interpreted by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The district court adopted the magistrate's report, which after reviewing the facts, concluded that Tukes had failed to establish a prima facie case under *Batson*. *Batson* provides that a prosecutor must rebut charges of racial discrimination in the exercise of peremptory strikes if the defendant can establish a prima facie case. To make out a prima facie case under *Batson*, the defendant must show that he or she is a member of a cognizable racial group, that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, and that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." 476 U.S. at 96, 106 S.Ct. at 1723.

Tukes's equal protection challenge fails because the other facts and circumstances demonstrate that the prosecutor was not exercising his peremptory strikes against veniremen on the basis of race. In this case, there were few blacks on the entire venire. The state exercised only one peremptory strike against a black; two others were excused for cause. The prosecutor cooperated with defense counsel in attempting to bring more blacks onto the petit jury by agreeing to take black members of the venire out of order ahead of white venirepersons. Further the prosecutor agreed not to use a peremptory strike against any additional black juror brought in for voir dire. In light of that fact, we hold that Tukes failed to establish a prima facie case under *Batson*. We therefore affirm the district court.

## CONCLUSION

As we conclude that none of Tukes's claims merit relief, we AFFIRM the decision of the district court denying relief.

RONEY, Senior Circuit Judge, specially concurring:

I concur in the result reached by the Court and all of the opinion, except that portion which holds that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), does not apply to any case where the state appellate court has not written an opinion on the Fourth Amendment issue and the state trial court did not set forth specific findings. I doubt if this is a very sound basis for deciding whether the defendant has received a full and fair hearing in the state appellate court. We affirm too many cases without opinion to suggest that a defendant has not received a full and fair hearing of every point asserted on appeal.

If the absence of an opinion makes it uncertain whether the appellate court has considered a particular argument, there being some other avenue to the result, then *Stone v. Powell* would not foreclose federal consideration if the issue turns the case in federal court. But if the defendant had a full opportunity to present the point, did present it, and the point had to be considered in order to reach the result obtained in the state court, then there should be a presumption that the court did in fact consider the argument and purposely rejected it after full consideration, regardless of the specific findings of the trial court.

As the Court points out, the state trial court gave Tukes a full and fair evidentiary hearing relating both to his coerced consent and invocation of counsel claims. The record reveals that the necessary material historical facts were developed at the suppression hearing, and, therefore, meaningful appellate review could have provided for the legal issues to be fully briefed and argued with the luxury of time for contemplation and research by counsel. In fact this Court has reviewed this issue on the same record that was before the state appellate court. Tukes raised the same Fourth Amendment claims before the state

court of appeal as he does before this Court. This meets the holding in *Stone v. Powell:*

> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force. (footnotes omitted).

428 U.S. at 494–95, 96 S.Ct. at 3052–53.

As the federal courts deal with their caseloads by foregoing opinions reciting every issue argued by the parties, it is counterproductive to burden ourselves with the consideration of Fourth Amendment claims that were in fact fully and fairly considered by a state court and necessarily rejected by the denial of appellate relief. The state courts are every bit as overloaded as the federal courts, and we should give full recognition to their practices, just as we do to our own.

Since the Fourth Amendment argument is rejected on the merits, whether it is barred from consideration under *Stone v. Powell* does not control the outcome, just as in *Agee v. White*, 809 F.2d 1487 (11th Cir.1987). But the direction here will impose upon our already overburdened district courts the time-consuming consideration of Fourth Amendment claims which have already received full and fair consideration in the state courts, trial and appellate, a task that *Stone v. Powell* was intended to eliminate.