ON APPLICATION FOR REHEARING
This Court's opinion of June 14, 1991, is withdrawn and the following is substituted therefor: We granted the writ of certiorari in this case to review the judgment of the Court of Criminal Appeals in Comer v. State, 572 So.2d 886
(Ala.Crim.App. 1990). In an unpublished memorandum opinion, the Court of Criminal Appeals stated that *Page 14 
the issue "concerning use of [Comer's] prior statement to impeach her is without merit." For reasons set out in this opinion, we must remand for further proceedings.
The petitioner, Shirley Comer, was convicted of arson and was sentenced to nine years in prison. We granted her petition for the writ of certiorari in order to review whether the statements used to impeach Comer were admissible. Comer argued in her petition that the prosecutor impeached her on cross-examination based on statements that she had given to a police officer. Comer argues that the use of this statement is in conflict with this Court's opinion in Walker v. State,369 So.2d 825 (Ala. 1979), because the statement was admitted without any evidence that it was voluntarily given.
Comer owned and operated a retail clothing business. On May 4, 1987, a fire occurred at her business and extensively damaged the building. A fire department inspector determined that the fire had been intentionally set, and he contacted the police department. A police investigator obtained a search warrant and inspected the building where the fire had occurred, and he also suspected arson. On May 5, 1987, the investigating police officer interrogated Comer at the office of the City of Cullman fire department regarding the fire. The interrogation was made and tape recorded at that office and was later transcribed. The transcript of that interrogation contains the following colloquy:
 "[Police Officer]: All right. As standard procedure, we make you aware of these rights, okay? You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while being questioned. If you can not afford to hire a lawyer, one will be appointed to represent you before any question[ing] if you wish. You can decide at any time to exercise these rights and not answer any question or make any statements. Do you understand these rights explained to you?
"[Comer]: Yes.
 "[Police Officer]: Having these rights in mind, do you still wish to talk to us now?
"[Comer]: I really don't care to."
The police officer continued to question Comer, and he conducted a lengthy interrogation. At trial, defense counsel objected to the admission of the statements made at the May 5, 1987, interrogation on the grounds that Comer had not waived her right against self-incrimination guaranteed by theFifth Amendment to the United States Constitution. After an in camera inspection of the transcript, the trial court ruled that Comer had not clearly and fully waived her right against self-incrimination when she made the statements to the police officer. The trial court held that the statements were inadmissible and sealed the transcript.
At trial, the State presented evidence that the fire was the result of arson and that it had been intentionally set on the inside of the building. The door to the building was locked when city firefighters arrived. The testimony at issue involved the whereabouts of a key to Comer's store.
When Comer made her statement to the police investigator on May 5, 1987, she stated that there were two keys to the store. Comer said that she carried one key with her and that the second key was used by an employee, but was usually kept in a plastic container located on Comer's desk at the store. At trial, Comer testified that she had brought the second key home with her and that she had left it in a brass bowl on a bookshelf.
The prosecution used Comer's May 5, 1987, statement to impeach her testimony regarding the location of the second key. Defense counsel objected to the use of the prior statement on the grounds that the prosecution had not laid the proper predicate. The trial court overruled the objection:
 "[PROSECUTOR]: Q. Do you remember having a conversation with Lynn Wood [the investigating police officer] about 8:45 a.m. on May 5, 1987?
"[COMER]: A. Yes, sir. *Page 15 
"Q. That was over at the city hall?[1]
"A. Yes.
 "Q. Do you remember who all was present there at that time?
"A. Yes, sir.
"Q. Who was that?
"A. Lynn and Dennis Murray and myself.
"Q. And that conversation was recorded?
"A. Yes, sir.
"Q. Do you remember that?
"A. Yes.
 "Q. Do you remember being told that it was being recorded?
"A. I think. I'm not for sure, but I think so.
 "Q. Do you remember having a conversation with Lynn Wood here at that time in regard to the key that [Comer's employee] had?
 "[DEFENSE COUNSEL]: We object. The predicate hasn't been laid.
"THE COURT: Overruled."
The State argues that it established the proper predicate for impeaching Comer with her prior inconsistent statement, citing C. Gamble, McElroy's Alabama Evidence § 201.10 (3d ed. 1977). Comer argues that in order for the prosecutor in this case to lay the proper predicate, under our decision in Walker, supra, he was required to affirmatively show that Comer voluntarily made the inculpatory statement.
In Walker, 369 So.2d at 826, this Court held that in order for the State to establish the proper predicate for impeaching a defendant with a prior inconsistent statement made in acustodial setting, the State must affirmatively show that the inculpatory statement was voluntarily made. Walker,369 So.2d at 825. Our decision in Walker was based on our decision inCampbell v. State, 341 So.2d 742 (Ala. 1976), where this Court said:
 "[Inculpatory statements made while the defendant is in custody are] admissible for an impeachment purpose only upon a predicate establishing that they are free from coercive or involuntary influences. The circumstances accompanying the making of the inculpatory statement will determine the extent to which this foundation must be established, e.g., a 'threshold' confession may, indeed, require evidence of a different voluntary setting than an in custody setting."
341 So.2d at 744. (Emphasis original.)
Our decisions in Walker and Campbell were based on United States Supreme Court decisions in Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Oregon v. Hass,420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), which apply only to statements made while the declarant is in custody. See,Campbell, 341 So.2d at 743. Miranda, supra, defined "custody" as "questioning initiated by law enforcement officers after a person has been . . . deprived of his freedom of action in any significant way." The record in this case is insufficient for this Court to determine whether Comer was in custody, and, thus, whether Walker applied, at the time the police officer interrogated her. The record merely shows that the investigating police officer questioned Comer at the fire department office on May 5, 1987, the day after the fire occurred. Comer was not indicted until over three months later, on August 26, 1987.
The mere fact that a police officer questioned Comer at the fire department office is not enough to determine whether the questioning was a custodial interrogation as defined underMiranda. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711,50 L.Ed.2d 714 (1977); California v. Beheler, 463 U.S. 1121,103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); Hooks v. State,534 So.2d 329 (Ala.Crim.App. 1987) (defendant is not in custody where he voluntarily goes to police station and voluntarily answers questions). Therefore, we cannot determine whether Walker
applies in this case.
However, custody is not crucial to our holding in this case. We hold that once a police officer informs a person of his or *Page 16 
her rights under Miranda, the police must honor that person's exercise of those rights even if the individual is not in custody.[2] Although the Miranda warnings may not have been required if the May 5, 1987, interrogation was noncustodial, once the police officer advised Comer of her rights he was bound to honor her exercise of those rights. Tukes v. Dugger,911 F.2d 508 (11th Cir. 1990).
We quote with approval the reasoning behind this rule as explained by the federal court in Tukes:
 "The state contends that because the [defendant] was not in custody when he was read his Miranda warnings, had he invoked his right to counsel the police would have been free to ignore that invocation. The state's position is without merit. If the state were free to tell a suspect that he had the right to an appointed lawyer, but could, while continuing to interrogate, refuse to provide the lawyer on the ground that the suspect was not actually in custody, the suspect would be led to believe that no request for counsel would be honored. The coercive effect of continued interrogation would thus be greatly increased because the suspect would believe that the police 'promises' to provide the suspect's constitutional rights were untrustworthy, and that the police would continue to violate those rights as they wished regardless of assurances to the contrary."
911 F.2d at 516 n. 11.
Because we conclude that the inculpatory statement was obtained in violation of Comer's "right to remain silent," as promised her by the investigating officer, it was inadmissible in the State's case-in-chief.
The record in this case shows that the police officer interrogated Comer at the fire department office about the fire at her business. Although arguably this may have been a noncustodial setting, the police officer read Comer her rights, as enunciated in Miranda. After being advised of her rights, Comer clearly attempted to exercise her Fifth Amendment right against self-incrimination by stating that she did not want to answer any questions. At that moment, the interrogation should have ceased. Miranda, 384 U.S. at 473-74, 86 S.Ct. at 1627-28;Michigan v. Mosley, 423 U.S. 96, 103-04, 96 S.Ct. 321, 326,46 L.Ed.2d 313 (1975); Martin v. Wainwright, 770 F.2d 918, 923
(11th Cir. 1985); Ex parte Johnson, 522 So.2d 234, 236 (Ala. 1988); and Bush v. State, 523 So.2d 538, 553 (Ala.Crim.App. 1988). The police officer, nonetheless, continued to question Comer, and she eventually made several statements concerning the fire at her business, which the prosecutor later used for impeachment purposes at trial.
In Mosley, supra, the Supreme Court elaborated on the scope of a suspect's rights under the Miranda rule to stop police questioning through the exercise of the right to remain silent:
 "Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subject discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.' " 423 U.S. at 103-04, 96 S.Ct. at 326.
In this case, the record shows that after Comer, during her May 5, 1987 interrogation, asserted her right to "cut off questioning" that right was not "scrupulously honored." Comer's statement to the police officer that she did not care to answer any of the officer's questions was an unequivocal invocation of her right to remain silent. Nevertheless, the officer continued to question her. Therefore, we hold that the police officer's continued questioning of Comer violated the dictates ofMiranda and Mosley and that the inculpatory statements *Page 17 
made at the May 5, 1987, interrogation were obtained in violation of Comer's Fifth Amendment right against self-incrimination.
Because we conclude that the inculpatory statement was obtained in violation of Comer's "right to remain silent," as promised her by the investigating officer, it was inadmissible in the prosecution's case-in-chief. We now must consider whether Comer's prior statement was admissible for impeachment purposes.
In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643,28 L.Ed.2d 1 (1971), the United States Supreme Court held that, although a criminal defendant's prior statement may have been obtained in violation of his Miranda rights, it may be used for impeachment purposes to attack the credibility of the defendant's trial testimony if it was voluntarily made and its trustworthiness satisfies legal standards. See also, Campbell, supra.
In this case the record is insufficient for this Court to determine whether Comer's prior statement was made voluntarily or was the product of coercive influences. If Comer's prior statement was made voluntarily, then it was admissible to impeach her trial testimony and her conviction should stand. If, on the other hand, Comer's prior statement was the result of coercive influences, then it was inadmissible even for impeachment purposes and Comer should be given a new trial. Because the record does not indicate the circumstances surrounding the prior statement and the trial court made no determination as to whether the prior statement was made voluntarily, we remand this case for a hearing on this issue and proceedings consistent with this opinion.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REMANDED; APPLICATION OVERRULED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] The investigator's office at the City of Cullman police department and the fire department office, where the interrogation took place, are both located in the Cullman city hall.
[2] We note that the mere administration of the Miranda warnings does not convert a noncustodial situation into "custody." See e.g., Davis v. Allsbrooks, 778 F.2d 168, 172 (4th Cir. 1985);United States v. Akin, 435 F.2d 1011, 1013 (5th Cir. 1970);United States v. Gordon, 638 F. Supp. 1120, 1133 (W.D.La. 1986).