**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 95-5216

IRIS WARNER,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CR-94-204)

Argued: December 6, 1996

Decided: January 3, 1997

Before HALL, ERVIN, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gregory Davis, Assistant Federal Public Defender,
Greensboro, North Carolina, for Appellant. Richard Stanley Glaser,
Jr., Assistant United States Attorney/Chief, Criminal Division,
Greensboro, North Carolina, for Appellee. **ON BRIEF:** William E.
Martin, Federal Public Defender, Greensboro, North Carolina, for
Appellant. Walter C. Holton, Jr., United States Attorney, Greensboro,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Iris Warner entered a conditional plea of guilty to possessing 118.6 grams of cocaine base with the intent to distribute it, for which she was sentenced to 87 months in prison. She appeals the district court's denial of her motion to suppress the introduction of the drugs into evidence, and she appeals her sentence. We affirm.

I.

A.

Three persons testified at the suppression hearing: J.E. Hoover, a detective with the Greensboro, North Carolina, police department; Annie L. White, an Airport Police officer who conducted the search; and Warner herself. The district court concluded that White was the most credible witness, reasoning that her relatively tangential involvement in the investigation and arrest rendered her less interested in the outcome of the hearing than either Warner or Hoover. Because Warner's testimony was inconsistent with White's in several respects, the district court concluded that Warner was less credible; thus, as to matters disputed between Warner and Hoover, the court accepted Hoover's version of what had occurred.

B.

Hoover testified that, on July 28, 1994, while on routine drug interdiction duty at the Piedmont Triad Airport, he noticed Warner soon after she arrived at the terminal on a flight from New York. Warner shielded her eyes with her hand to avoid Hoover's scrutiny, and she left the terminal without first going to the baggage claim area. Hoover approached her, identified himself, and asked if he could see her airline ticket. Warner showed Hoover the ticket, which had been issued

in her name; at Hoover's request, she also produced valid identification.

Hoover then asked Warner if she were carrying any drugs in her shoulder bag or on her person. Warner parroted Hoover's questions, initially professing not to understand them. Warner finally denied possessing any drugs, and she permitted Hoover to look through her bag, which was found to contain no contraband.

Finally, Hoover asked Warner whether she would go with him to the Airport Police office to be searched. Warner replied, "Yes, but I would like my lawyer." Hoover and his partner, Detective Kaplan, accompanied Warner to the office; Hoover called for White on his radio and asked her to meet them there.

On the way to the office, the trio passed by a bank of telephones, but Warner neither asked to use them nor repeated her request for a lawyer. When they arrived at their destination, White was waiting for them. White escorted Warner to a small room, then asked Warner anew for her consent to be searched. Warner did not respond verbally, but instead gave White a package that had been concealed beneath her clothing. The package turned out to contain crack cocaine.

Warner was indicted on a single count of possessing the cocaine with the intent to distribute it. After the district court denied her motion to suppress, Warner agreed to plead guilty on condition that she be allowed to appeal the court's ruling and the sentence imposed on her conviction.

II.

A.

Neither party contends that the police had probable cause to believe that Warner was engaged in criminal activity until she actually produced the cocaine. Warner asserts that she had by then been unlawfully seized, rendering the drugs inadmissible as fruits of the illegal police conduct. The district court found that the entire episode was a consensual encounter, and that the drugs were produced as the result of a lawful attempt to obtain Warner's consent to be searched.

3

The district court's findings are not clearly erroneous. Though it is probably accurate to say that most encounters with interdiction agents are not enthusiastically "consented" to, but are more or less tolerated or endured, such encounters ripen into seizures "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980).

Here, as in Mendenhall, the encounter took place in a public area, there was no overt display of authority or of weapons, and the police casually approached the suspect, politely requesting information. The Supreme Court refused to find that a seizure had occurred under such circumstances, and we decline to do so today.

B.

Inasmuch as Warner had not been seized prior to the drugs being produced, the Fifth Amendment right to counsel, afforded to those in police custody, had not yet attached. See Tukes v. Dugger, 911 F.2d 508, 515 (11th Cir. 1990) ("Where the prisoner is not in custody, the Edwards [v. Arizona] and [Arizona v.] Roberson concerns are not triggered because the non-custodial defendant is free to refuse to answer police questions, free to leave the police station and go home, and free to seek out and consult a lawyer."). Thus, Hoover was not compelled to honor Warner's request for a lawyer; he could -- and did -- simply ignore it.

III.

Warner's attack on her sentence fares no better. She contends that the terms "cocaine" and "cocaine base," as they are defined in 21 U.S.C. § 841, do not adequately distinguish crack cocaine from its powdered relative. According to Warner, the term "cocaine base" is sufficiently ambiguous to require invocation of the rule of lenity, allowing her to be sentenced for possessing crack cocaine as if she had actually possessed the same quantity of powder. We recently rejected an identical argument in United States v. Fisher, 58 F.3d 96 (4th Cir.), cert. denied, 116 S. Ct. 329 (1995).

4

IV.

Warner's conviction and sentence are affirmed.

<u>AFFIRMED</u>

5