[Crim. No. 7283. Second Dist., Div. One. July 24, 1961.]

THE PEOPLE, Respondent, v. ANTONIO GILBERT
BRACAMONTE, Appellant.

Antonio Gilbert Bracamonte, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Respondent.

WOOD, P. J.—In two counts of an information the defendant was accused of burglary. He admitted allegations of the information that he had been convicted previously of two felonies (burglary, and violation of section 11500 of the Health and Safety Code). In a jury trial he was convicted on both counts, of burglary in the second degree. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that there was no probable cause for his arrest, and that the court erred in receiving evidence as to articles obtained from defendant, for the reason such evidence was obtained by illegal search and seizure.

On December 23, 1959, a burglary was committed at the home of Mr. L. R. Smith in Los Angeles, and a "Webcor" phonograph-radio and an "American Flyer" electric train (in an unopened box) were stolen from his home.

On December 27, 1959, a burglary was committed at the home of Mrs. Demytrack, and an "Admiral" table radio, a watch, and some money were stolen therefrom.

In the evening of December 27, 1959, Officers Pearce and Cochran, who were on duty and were traveling in a "plainclothes car," entered a parking lot on Temple Street. While Officer Pearce was driving the car into the lot, the light from the headlights of the car was on a parked car in the lot. At that time he saw the defendant and a woman (later identified as Miss Leventis) sitting in the parked car. Officer Pearce stopped his car about 20 feet from the parked car, and at that time the light from the police car was on the other car. Then defendant and the woman got out of the car and walked hurriedly toward a café which was at the side of the lot. The officers approached them and engaged them in conversation. Officer Pearce knew the defendant and the woman— he had talked with them on prior occasions, and he had arrested the defendant on prior occasions. Officer Pearce testified that both of those persons were users of narcotics and both of them had "records" for narcotics. After the officers had approached the two persons on the occasion here involved, Officer Pearce asked them if they were still using narcotics.

They replied, "Yes." He asked if they were "high." They replied, "Yes." He asked them how their marks were. They replied, "Not too bad." Then defendant showed his arm to the officers—there were several needle marks on his arm. Officer Pearce testified that some of the marks were old and some were fresh; the defendant appeared to be "messed up" or "high," and his eyes appeared to be puffy; the defendant talked in a slow, sleepy manner; the fresh marks on defendant's arm led the officer to believe that defendant had had a recent injection of narcotics; he (officer) believed that defendant was under the influence of narcotics. After such observations, Officer Pearce arrested defendant and the woman (Miss Leventis) "for narcotics." Then Officer Cochran searched defendant and took a watch from his pocket. That officer asked defendant who owned the watch. Defendant said it belonged to a girl friend, but later he said it belonged to Miss Leventis. He (officer) asked Leventis if the watch belonged to her. She replied, "No." In response to questions by the officers, defendant said that he owned the car (in which he and Leventis had been sitting) and that he had the keys to it.

Officer Cochran testified that he asked the defendant for permission to look into his car; and thereupon the defendant handed the car keys to the officer. Officer Pearce also testified that defendant handed the car keys to Officer Cochran and said that the officer "could search" the car.

Officer Cochran searched the car and found therein a "Webcor" phonograph-radio, an "American Flyer" electric train that was "still in the [unopened] box," and an "Admiral" table radio. Defendant said he purchased the electric train from a man on the street for $10, and that the record player and radio belonged to him. Two days later, the defendant said that he bought the train, radio, and the other articles from somebody on Temple Street, but he could not tell his name because he did not want to get him into trouble.

Mr. L. R. Smith went to the police station and identified the electric train and phonograph-radio as property which was taken from his home. Mrs. Demytrack identified the radio and watch as property that belonged to her.

Defendant testified that on December 27, 1959, about 7 p. m., he was in the Carioca Café on Temple Street talking and drinking with friends; about 9 p. m., when he was on the street (in front of the café), a man by the name of "Rudy," whom he had seen twice, asked him if he was interested in

buying a radio; defendant replied in the affirmative, and they went to the man's car which was across the street in the same lot where defendant's car was; the man asked him if he was interested in buying a radio, record player, and train set (which were in the car) for $55; defendant offered $37 for the articles, and the man accepted the offer and "threw in the watch" as a part of the transaction; the man and the defendant carried the things to defendant's car; then defendant returned to the front of the Carioca Café where he met Miss Leventis; they entered his car and went to the parking lot by the Marong Café (the café they were approaching when the police arrived); after defendant was arrested, Officer Cochran removed a watch from defendant's pocket; when the officer asked him where he got the watch, he (defendant) did not say anything; he did not say that the watch belonged to Leventis; he did not tell the officers that he purchased the train from a man on the street for $10; he did not make any statement about any other articles which were found in his car.

Defendant testified further that he first saw the officers (on December 27) when Officer Pearce said, "Tony, come here"; then the officer signaled for the girl to come there; the officer asked defendant if he was "still using"; defendant replied, "No"; Officer Cochran said he was going to search defendant; defendant "refused," and asked if he had a search warrant; the officer said he did not have a warrant; the officer pulled a gun on defendant, and said he was going to search him; then the officer searched him and removed a watch from defendant's pocket; the officer had not asked to see defendant's arms; the officer asked for the car keys; defendant refused to give them to the officer; then the officer took the keys from defendant's pocket; he did not give the officer permission to search the car.

Miss Leventis, called as a witness by defendant, testified that defendant said that he did not want the officers to search his car; that Officer Cochran asked for the keys to the car, and defendant said he would not give them to him; then the officer took the keys from defendant's pocket.

■ A peace officer may, without a warrant, arrest a person when a felony has been committed and the officer has reasonable cause for believing the person arrested to have committed it. (Pen. Code, § 836; *People* v. *Gusukuna,* 152 Cal. App.2d 135, 137 [312 P.2d 714].) ■ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion

of the guilt of the accused." (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].) There was evidence that, immediately preceding the arrest, the defendant said that he was still using narcotics, that he was high, and that his marks were not too bad. Also, there was evidence that it appeared to the officer that defendant was "messed up" or "high," and that his eyes were puffy. The officer observed that defendant talked in a slow and sleepy manner, and that there were fresh needle marks on his arm. Such evidence "afforded sufficient ground for belief that defendant had been in possession of narcotics recently and thus had committed a felony." (See *People* v. *Smith,* 141 Cal.App.2d 399, 403 [296 P.2d 913]; and *People* v. *Elliott,* 186 Cal.App.2d 178, 182-183 [8 Cal.Rptr. 795].) There was probable cause for arresting defendant upon a charge of unlawfully possessing narcotics. The arrest was lawful. A search without a warrant is valid where it is incident to a lawful arrest. (*People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40].) In the present case the search of defendant was incident to a lawful arrest. There was evidence that defendant consented to the search of his automobile. The officers testified that Officer Cochran asked defendant for permission to search his automobile; and that, in response thereto, the defendant handed the automobile keys to the officer. The question as to whether defendant consented to the search was one of fact for the determination of the trial judge. (*People* v. *Gorg,* 45 Cal.2d 776, 782-783 [291 P.2d 469].) The evidence herein was sufficient to support a finding that defendant consented to the search. The search of defendant and his automobile was not illegal. The court did not err in receiving evidence as to the articles obtained from defendant.

By reason of the above conclusions, it is not necessary to discuss other contentions of appellant.

The judgment and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 15, 1961.