**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Melvin Wayne HALL,**
**Defendant-Appellant.**

**No. 76–4501.**

United States Court of Appeals,
Fifth Circuit.

Jan. 9, 1978.

Lee A. Chagra, Joseph S. Chagra, El Paso, Tex., Robert H. Crawford, Chattanooga, Tenn., for defendant-appellant.

Jamie C. Boyd, U. S. Atty., San Antonio, Tex., Stanley Serwatka, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge:

Melvin Wayne Hall was tried by a jury, found guilty, and convicted of possession of a sawed-off shotgun in violation of 26 U.S.C. § 5861(d). On this appeal he contends that the evidence introduced at trial was procured through an unlawful search of the vehicle in which he was traveling. We find the police procedures challenged to be reasonable in the circumstances, and affirm the conviction.

At approximately 12:30 or 12:40 in the morning of July 22, 1976, El Paso police officers Viramontes and McGinnis approached the intersection of Sunland Drive and I–10 in the city of El Paso. They observed a vehicle, occupied by two persons, parked at an Exxon service station near the intersection. Since the service station was closed and there was normally little traffic in the area at that time, there being no other buildings or dwellings in the vicinity, the officers decided to investigate.

Officer McGinnis went to the passenger side of the vehicle and asked Hall, the passenger, what business they had there at that time. Hall replied that they were taking a rest. McGinnis then asked if they were traveling and was told they were not. Hall was requested to produce identification and, when he could not do so, to step out of the vehicle. The officers observed that Hall seemed highly intoxicated and "in sort of a daze."

The driver of the car was asked to exit the vehicle. Since both men appeared highly intoxicated, they were placed under arrest for public intoxication, in violation of Tex.Penal Code Ann. § 42.08(a) (Vernon). Officer McGinnis then searched the front seat area of the car, including the open glove compartment. He found a pistol beneath the passenger seat. The officers decided to inventory the car pursuant to its impoundment. McGinnis asked Hall to open the trunk. Hall did so,[1] and the officers observed a sawed-off shotgun partially sheathed in a case apparently designed for carrying a pool cue, along with a suitcase and other effects. A wrecker was called and the vehicle impounded.

Subsequent to his arrest, Hall was questioned by Special Agent Jenson of the Bureau of Alcohol, Tobacco, and Firearms, United States Treasury Department. Prior to the questioning Hall was advised of his constitutional rights. Jenson's testimony established that Hall admitted ownership of the pistol found under the seat. He claimed that he had purchased it for $45 from a man in a bar in Huntsville, Alabama. Hall acknowledged having received the shotgun in Jacksonville, Florida, in lieu of a debt owed him by a former roommate, and having cut down the barrel and the stock so the weapon could be carried in a suitcase as he hitchhiked from Florida to El Paso. He also admitted ownership of another weapon, a derringer, that he asserted he had borrowed from a bar owner in Huntsville. The derringer was strapped to Hall's leg but was not found by the officers in their search.

Although a motion to suppress the evidence was not made prior to trial, the district court allowed the motion to be made during the trial and denied it on the

---

1. Hall claims that he did not open the trunk, but gave Officer McGinnis the keys.

merits, holding that probable cause existed for the search. The district court considered the motion, notwithstanding its tardiness, in order to avoid penalizing the appellant. Such delayed consideration of a motion to suppress is authorized by Fed.R. Crim.P. 12(f) "for cause shown." We believe the district court's desire to avoid penalizing a criminal defendant for the inadvertence of his attorney constitutes "cause" under 12(f) and is within the court's discretion. *Glisson v. United States*, 406 F.2d 423, 425 (5th Cir. 1969); *cf. United States v. Seely*, 301 F.Supp. 811, 813–14 (D.R.I.1969) (discretion lies in district court to permit motion to dismiss indictment even after plea when justice requires). Accordingly, we turn to consideration of the contested search.

■ Since the district court made only the bare legal conclusion that probable cause existed for the search, without any findings of fact, we have independently reviewed the record to determine the propriety of admitting the shotgun into evidence. *See United States v. Horton*, 488 F.2d 374, 380 (5th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *United States v. Smith*, 543 F.2d 1141, 1145 (5th Cir. 1976). If the district court was correct in admitting the evidence the judgment should stand, whether or not the reason given was correct. *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 42. It appears from the record that Officer McGinnis asked Hall to open the trunk. Hall either did so himself or handed the keys to McGinnis. Whether Hall consented to the search "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 862–63 (1973); *United States v. Smith*, 543 F.2d 1141,

1145–46 (5th Cir. 1977). We conclude that the record supports a finding that regardless of whether McGinnis or Hall actually opened the trunk, the search was conducted with Hall's consent.[2]

■ Officer McGinnis asked Hall to open the trunk after Hall had been arrested for public intoxication. It is generally recognized that coercion is more easily found if the person consenting to the search has been placed under arrest, but the fact that an individual is under arrest at the time he gives his consent is not, of itself, sufficient to establish that his consent was involuntary. *See* 9 A.L.R.3d 858, 875–76, 880. The holdings in *Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), and *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), confirm that a defendant's consent to search may be knowingly and voluntarily given after his arrest. According to *Watson*, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." 423 U.S. at 424, 96 S.Ct. at 828, 46 L.Ed.2d at 609.

It appears that no *Miranda*[3] warnings were given Hall after his arrest and before the search. In *Watson*, as in most of this court's decisions upholding a defendant's consent to search after his arrest, the defendant had received *Miranda* warnings. *See United States v. Canseco*, 465 F.2d 383, 385 (5th Cir. 1972); *United States v. Legato*, 480 F.2d 408, 413 (5th Cir. 1973), *cert. denied*, 414 U.S. 979, 94 S.Ct. 295–96, 38 L.Ed.2d 223; *United States v. Luton*, 486 F.2d 1021, 1023 (5th Cir. 1973).[4]

In *United States v. Garcia*, 496 F.2d 670, 673–75 (5th Cir. 1974), this court was directly presented with a consent search situation where no prior *Miranda* warnings were given to the defendant. Holding that the

---

**2.** We therefore need not reach the issues whether the pistol was found under the seat during a legitimate search incident to arrest, and whether probable cause to search the car existed after the pistol was found.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** *But see United States v. Horton*, 488 F.2d 374, 378 (5th Cir. 1973) (custodial consent search upheld although *Miranda* warnings not given until completion of search).

question of voluntary consent is a factual issue to be resolved from the totality of the circumstances, we concluded that *Miranda* warnings are not required to validate consent searches where no official coercion is shown. We declined to import into fourth amendment analysis the safeguards against self-incrimination enunciated in *Miranda* to strengthen the fifth amendment's function in preserving the integrity of criminal trials. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) clearly held that the absence of proof that a defendant knew he could withhold consent, though a factor in the overall voluntariness determination, is not to be given controlling significance, and rejected "the domino method of constitutional adjudication," *id.* at 246, 93 S.Ct. at 2057, 36 L.Ed.2d at 874. *See United States v. Watson*, 423 U.S. at 424, 96 S.Ct. at 828, 46 L.Ed.2d at 609; *Mason v. Pulliam*, 557 F.2d 426, 428 (5th Cir. 1977).[5]

Hall makes no claim of intimidation or other threat of force by the arresting officers. No promises were made to him, nor were any more subtle forms of coercion present that might affect his judgment. Hall testified that the officer told him he could either detain him and obtain a search warrant or Hall could permit him to search the car. Hall's stated belief that no incriminating evidence would be found is a factor pointing to the validity of his consent. Believing he had nothing to hide, he had nothing to gain by refusing to consent to the search. *See Davis v. State*, 226 So.2d 257, 260 (Fla.Dist.Ct.App.1969). His intoxication is a factor to consider, but that fact alone is not sufficient to undermine his consent. *See People v. Bracamonte*, 194 Cal.App.2d 167, 15 Cal.Rptr. 54 (1961); *People v. Garcia*, 227 Cal.App.2d 345, 38 Cal. Rptr. 670 (1964); 9 A.L.R.3d 903, 917.

In sum, there is no evidence in the record of any intimidation, physical or psychological abuse, or threats tending to invalidate the consent. The absence of a *Miranda* warning prior to the search is only one factor in assessing voluntariness. In light of the surrounding facts and circumstances, we are convinced that the consent was voluntary.

■ Moreover, we believe the record in this case justifies the alternative holding that the officers discovered the shotgun at the outset of an inventory conducted pursuant to the legitimate impoundment of the vehicle. Officer McGinnis was authorized to arrest Hall and his companion for public intoxication. Tex.Code Crim.Proc.Ann. Art. 14.01 (Vernon); *Chambler v. State*, 416 S.W.2d 826, 828 (Tex.Crim.App.1967).[6] Given their state of intoxication, neither Hall nor the other occupant was capable of safely driving the automobile to the police station. If it had been left at the service station, the automobile would have been subject to vandalism and might have interfered with the service station owner's use of his property. Under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, 1005 (1976), impoundment of the automobile was proper in the circumstances.

■ Officer Viramontes testified that when a vehicle is impounded by El Paso policemen, they routinely conduct an inventory of its contents, pursuant to the policy of the El Paso Police Department.[7] The officers were clearly entitled to conduct an

---

**5.** The Ninth Circuit, confronted directly with this issue of consent to search after arrest without *Miranda* warnings, followed *Garcia* in *United States v. Lemon*, 550 F.2d 467, 473 (1977).

**6.** *Murphy v. State*, 378 S.W.2d 73 (Tex.Crim. App.1964), where the officer pulled the defendant, a passenger, from a stopped car and then made a determination of intoxication, is not controlling. The state court held the arrest in *Murphy* invalid because it occurred when the defendant was pulled out of the car, and no

facts or circumstances warranted her being pulled from the car. 378 S.W.2d at 74.

**7.** This policy, which is common in American police departments, responds to several legitimate interests: (i) protection of the police from danger, (ii) protection of the police against claims and disputes over lost or stolen property, and (iii) protection of the owner's property while it remains in police custody. *Opperman*, *supra*.

inventory of the automobile prior to impounding it. *United States v. Wade*, 564 F.2d 676 (5th Cir. 1977). We have set out above our conclusion, based on our review of the record, that Hall was in no way coerced into permitting the trunk to be opened. Officer McGinnis, who was conducting the inventory, thus was properly in a position to observe the sawed-off shotgun when the trunk was opened. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067, 1069 (1968); *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977).

Hall contends the inventory was invalid because a complete listing of the contents of the vehicle was not made. The officers used a checklist on which they noted the presence of numerous items commonly found in an automobile, but did not include a suitcase and some clothing found in the car. While we agree that this procedure fails to fully effectuate the interests sought to be protected by an inventory, we hold that in the circumstances of this case, where consent was given to open the trunk and the illegal item was immediately apparent to the investigating officer, failure to list completely the contents of the vehicle does not invalidate the inventory. However, the police department is well advised to closely examine existing caretaking procedures to insure that they comply with the rationale underlying their use.

Hall also urges that the inventory was tainted by the officers' interest, as related during the testimony of Officer Viramontes, in finding illegal items that could be taken into custody. The government correctly answers that the officers' confusion concerning the nature of an inventory will not vitiate the search if it is otherwise legitimate. The investigating officer's suspicion that he might find contraband or other evidence does not invalidate an inventory search where it is clear that the procedure used is a valid inventory procedure and is not merely a pretext for a search. *United States v. Ducker*, 491 F.2d 1190, 1192 (5th Cir. 1974).

The conviction is AFFIRMED.