DeMOSS, Circuit Judge,
concurring in part and dissenting in part:
I am in substantial agreement with the panel majority’s resolution of most issues raised on appeal by James Ford Seale. However, I believe that the statute of limitations ran long before Seale was indicted in 2007. I also believe that the district court’s admission of Seale’s inculpatory statement to FBI agents, which was elicited in police custody without a Miranda warning, was reversible error. On these two points, I dissent.
I.
I first wish to reiterate my view that this prosecution is barred by the statute of limitations for the reasons stated in the first, unanimous opinion of this panel. See United States v. Seale, 542 F.3d 1033 (5th Cir.2008). The panel’s decision was vacated by a 9-8 vote to take the case en banc. 550 F.3d 377 (5th Cir.2008). On en banc consideration, the court divided equally, 9-9, resulting in the summary affirmance of the district court. 570 F.3d 650 (5th Cir.2009). Unfortunately, there is no final word regarding how courts are to determine the limitations period applicable to pre-1968 kidnapings. Confusion will continue to reign on whether changes to penalties retroactively affect limitations periods and how the federal saving clause affects statutes of limitations. The rigamarole of litigation in the district court, a three-judge panel of this court, an eighteen-judge en banc court, and a question certified by a 12-6 vote to the United States Supreme Court has produced ample heat but shed little light on these important legal issues. United States v. Seale, 577 F.3d 566 (5th Cir.) (certifying limitations question pursuant to 28 U.S.C. § 1254(2) and Supreme Court Rule 19), question dismissed, — U.S. -, 130 S.Ct. 12, - L.Ed.2d - (2009); see also 130 S.Ct. at 12 (statement of Stevens, J., joined by Scalia, J.) (“This certificate presents us with a pure question of law that may well determine the outcome of a number of cases of ugly racial violence remaining from the 1960s.”). Clarity in this area is still much-needed.
II.
Seale’s conviction cannot stand because the district court committed reversible error in admitting the statement Seale made to FBI agents on November 6,1964.
A.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that statements made by the accused in custodial interrogation are inadmissible against the accused unless he *498 is first informed of his right to remain silent, his right to counsel, his right to have counsel appointed, and that any statement made to law enforcement can be used against him. Id. at 444, 86 S.Ct. 1602. The Court emphasized that this rule arose from the need to protect an individual’s Fifth Amendment right against compelled self-incrimination via a robust application of the exclusionary rule. Id. at 457, 86 S.Ct. 1602. This applies whether or not the individual knew of such right. See id. at 468, 86 S.Ct. 1602 (“The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given.”).
Miranda itself did not address whether its rule applied retroactively or prospectively only. However, one week after its decision in Miranda, the Court issued Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The petitioners in Johnson v. New Jersey were tried and convicted based on confessions elicited without Miranda warnings, and the convictions became final before Miranda was decided. Id. at 725-26, 86 S.Ct. 1772. In unambiguous terms, the Court held that “Miranda applies only to cases in which the trial began after the date of our decision one week ago.” Id. at 721, 86 S.Ct. 1772. The rule did not apply “retroactively,” that is, to convictions which were already final, nor did it apply to cases tried before Miranda’s effective date. Id. at 731-32, 86 S.Ct. 1772. However, even for statements elicited pre-Miranda, the rule would henceforth apply “to persons whose trials had not begun as of June 13, 1966.” Id. at 734, 86 S.Ct. 1772; see also Frazier v. Cupp, 394 U.S. 731, 738, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (holding, on collateral review, that Miranda rule did not apply to confession because petitioner was tried before Miranda decision). Since Johnson v. New Jersey and Frazier, no Supreme Court decision has applied or revisited this rule.
Prior to Miranda, fewer safeguards existed to protect the rights of arrestees. In Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), the Court invalidated a conviction because “the petitioner’s written confession was obtained in an atmosphere of substantial coercion and inducement created by statements and actions of state authorities.” Id. at 513, 83 S.Ct. 1336. The petitioner had been held incommunicado, his requests to see a lawyer and to speak to his wife were denied, and the police refused to present the petitioner to a magistrate unless he signed a written confession. Id. at 509-11, 83 S.Ct. 1336. The Court held that “under a totality of circumstances” the facts “evidenc[ed] an involuntary admission of guilt” which deprived the petitioner of his right to due process under the Fourteenth Amendment. Id. at 513-14, 83 S.Ct. 1336. The due process/voluntariness standard is fact-dependent. See id. The Court reasoned that “the fact that a defendant is not reminded that he is under arrest, that he is not cautioned that he may remain silent, that he is not warned that his answers may be used against him, or that he is not advised that he is entitled to counsel” were all relevant to the question of voluntariness; however, such facts were not necessarily determinative. Id. at 516-17, 83 S.Ct. 1336. It was not until Miranda that warnings of this nature became a mandatory feature of custodial interrogation.
Miranda marked a watershed moment concerning the rights of the accused. In Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), the *499 Court made pellucid that the Miranda warning is not mere prophylaxis for the Fifth Amendment right against self-incrimination. The warning had become “part of our national culture,” and comprised a constitutional right in and of itself. Id. at 443-4, 86 S.Ct. 1602.[1] However, the Miranda rule, rooted in the Fifth Amendment’s guarantee against compelled self-incrimination, did not supplant the Court’s previously articulated due process/voluntariness standard. See id. at 434, 120 S.Ct. 2326 (“We have never abandoned this due process jurisprudence, and thus continue to exclude confessions that were obtained involuntarily.”). It is possible that self-incriminating statements elicited in conformance with Miranda may be deemed inadmissible because they were compelled. See id. at 444, 120 S.Ct. 2326 (citing Berkemer v. McCarty, 468 U.S. 420, 433 n. 20, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).
B.
In 2007, more than four decades after Miranda and Johnson v. New Jersey were rendered, the government indicted James Ford Seale on one count of conspiracy to kidnap and two counts of kidnaping Henry Dee and Charles Moore. See 18 U.S.C. § 1201. According to a motion to suppress filed by Seale on March 22, 2007, the government “produced in discovery an FBI report alleging that defendant Seale made an inculpatory statement during the time he was in custody.”[2] Seale had been arrested on a Mississippi magistrate’s warrant in conjunction with his suspected role in the murders of Dee and Moore by the Mississippi Highway State Police (“MHSP”) in the early morning hours of November 6, 1964.[3] The FBI report, which was dictated and memorialized by Special Agent Edward Putz on November 6, 1964, the day of Seale’s arrest, reads as follows (the names of the arresting MHSP officers were redacted):
At 5:10 a.m. on November 6, 1964, JAMES FORD SEALE was apprehended on the charge of murder by [redacted]. Special Agents EDWARD JOHN PUTZ and LENARD A. WOLF were present at the apprehension.
Special Agents PUTZ and WOLF accompanied [redacted] in transporting JAMES FORD SEALE to Jackson, Mississippi.
En route to Jackson, JAMES SEALE answered general questions not pertaining to the murders. He remained mute at direct questions that were asked him about the murders with the following exception which is set out here verbatim:
SA WOLF: We know that on Saturday afternoon May 2, 1964, you picked up in your car HENRY DEE and CHARLES MOORE, two Negro boys from Roxie. You and CHARLES EDWARDS and others took them to *500 some remote place and beat them to death. You then transported and disposed of their bodies by dropping them in the Mississippi River. You didn’t even give them a decent burial. We know you did it, you know you did it, the Lord above knows you did it.
JAMES SEALE: Yes, but I’m not going to admit it; you are going to have to prove it.
When questioned further regarding this remark he said “I’m not going to say anything more”.
[Redacted] all heard the above conversation. SA PUTZ noted that the time that SEALE made the above statement was at 5:40 a.m.
Seale asserted in the motion to suppress in 2007 that, “[a]t the time the statement was made, Defendant had not been properly advised of his right to remain silent and his right to have an attorney appointed to represent him.” Seale also argued that he “was subjected to physical abuse by the officers and agents questioning him,” and that the FBI agent questioning him used the psychologically coercive “Christian Burial Speech.” See Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Seale filed a separate memorandum of points and authorities, which stated in part: “At the time the statement was made, the United States Supreme Court had not yet issued their famous opinion in the case of Miranda .... ” The memorandum did not cite Johnson v. New Jersey, but rather, argued that Seale’s statement was inadmissible under the voluntariness standard of Haynes v. Washington.
The government responded to Seale’s motion on April 16, 2007. It also argued that the voluntariness standard of Haynes v. Washington applied. However, the government specifically averred that the Miranda rule did not apply, and for the first time, cited Johnson v. New Jersey. I feel it necessary to draw attention to the following passage from the government’s response:
Defendant appears to recognize that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not decided until two years after Seale made the admission in this case, and that the procedural safeguards afforded by that decision are therefore not applicable here. Johnson v. New Jersey, 384 U.S. 719, 732, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (holding Miranda decision does not apply retroactively); Frazier v. Cupp, 394 U.S. 731, 738, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (same). Although the defendant does not suggest that Miranda applies in this case, he inaccurately asserts that a Supreme Court decision three years prior to Miranda imposed a requirement that “defendants must be properly advised of their right to remain silent.” Defendant’s Motion to Suppress at 2. In fact, that prior decision, which governs the admissibility of Seale’s 1964 statement, requires a reviewing court to examine the totality of the circumstances concerning the interrogation when determining whether a defendant’s statement is “voluntary.” See Haynes v. Washington, 373 U.S. 503, 514, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).
Thus, the government first cited Johnson v. New Jersey, and affirmatively stated that Seale was not entitled to the protections and benefits of the Miranda decision, notwithstanding the fact that trial would begin over forty years after Miranda became applicable to all trials.
The district court conducted a hearing on the motion to suppress, as well as on other pre-trial motions, from April 30 to May 2, 2007. Agent Putz, who was long-since retired, testified that the FBI memorandum accurately recounted the events of November 6, 1964. Putz stated that Seale *501 never requested counsel, but also made no further admissions. Putz testified that he never heard the arresting MHSP officers advise Seale that his statements could be used against him, nor that he had the right to an attorney and the right to remain silent. The government offered no testimony that Miranda warnings were given to Seale.
At the suppression hearing, Seale’s counsel, the government, and the court all operated under the misguided assumption that Miranda did not apply to Seale’s custodial confession. On April 30, Seale’s counsel argued that under Haynes, the FBI agents were obligated to inform Seale of his right to counsel, his right to remain silent, and that his statements could be used against him. Seale’s counsel did not discuss Johnson v. New Jersey. In response, the government stated:
Despite counsel’s protestations to the contrary, Miranda was not the law. The decision was not made until 1966. Indeed, the Supreme Court of the United States said in [Johnson v. New Jersey] and also in [Frazier v. Cupp] that Miranda does not apply retroactively. Miranda represented a demarcation. From Miranda forward there was a requirement to warn the defendant, as counsel has suggested that Mr. Seale was entitled to here.
Thus, for a second time, the government made an incorrect statement of law concerning the applicability of Miranda and the holding of Johnson v. New Jersey. The government’s comments constituted the only references to Johnson v. New Jersey and the only arguments whether the protections of Miranda applied to Seale’s trial. Two days after hearing evidence and argument concerning the motion to suppress Seale’s statement, the district court issued an oral ruling on May 2. The court reasoned that neither Haynes nor Brewer was apposite. The court did not discuss whether it considered Miranda applicable, nor did it mention Johnson v. New Jersey and its bearing upon the Miranda decision. The court denied Seale’s motion to suppress.
C.
Seale’s confession was one of two pieces of evidence which placed him at the scene of the murders. The other statement came from Charles Edwards, a co-conspirator in the abduction of Dee and Moore. Edwards took part in abducting the two young men on May 2, 1964, taking them to Homochitto National Forest, beating them, and demanding to know where guns were being stored in anticipation of what the KKK supposed was a Black Panther-inspired insurrection. Once Dee and Moore stated that guns were being hidden in the baptistry of the Roxie Baptist Church, Edwards departed the scene in order to notify law enforcement and search the church. He testified that he left Seale and other KKK members with Dee and Moore, who were alive at the time. Edwards did not witness what occurred next. He stated that some four to six weeks later, he was present when James Seale described to other members of the KKK what transpired after Edwards left. Seale did not speak to Edwards directly; Edwards was present and overheard the details. According to Edwards, Seale revealed that he took Dee and Moore first to the farm of Clyde Seale (the defendant’s father), and from there to Natchez, Mississippi, across the Mississippi River into Louisiana, and then a short distance north to Parker’s Landing, which is in Mississippi. Dee and Moore were weighted down and cast alive by James Seale and others into the Old Mississippi River (a former arm of the river which forms the Mississippi-Louisiana border).
*502 Edwards’s statements were based entirely on forty-year-old hearsay. He could not recall precisely when, where or under what circumstances Seale disclosed the details of the transportation and deaths of Dee and Moore. Unsurprisingly, Edwards never wrote down the details of Seale’s statement, and never revealed the details to another person before being compelled to testify. In fact, Edwards said he had lied about the facts or covered them up for over forty years: he lied to state and federal law enforcement agents in the 1960’s; he asserted his Fifth Amendment privilege before the House Un-American Activities Committee in 1966; he lied to a film crew from the news program 20-20 in 1999; and he lied to the victims’ families. Edwards acknowledged that he continued to lie to federal officials investigating the present case. Even after he was granted immunity, stripped of his Fifth Amendment privilege, and compelled to testify, Edwards insisted that he knew nothing about what happened to Dee and Moore after he left them in the forest. He was administered a polygraph examination and was informed that he had failed the portion of the examination pertaining to what happened after he left the forest. Edwards testified that the government threatened to question his family and charge him with perjury. At this point, for the first time in over forty years, Edwards divulged what he remembered about Seale’s inculpatory statements about killing Dee and Moore.
Seale’s confession, though far more succinct than Edwards’s testimony, played a very prominent role in securing his conviction. On the sixth day of trial, June 12, 2007, the government called FBI Special Agent Putz as its final witness and elicited the facts and circumstances of the confession. The government then relied heavily upon it during the rebuttal portion of its closing argument. In fact, Seale’s one-sentence confession was the fulcrum of the government’s final words to the jury in this case. At the outset of rebuttal, the prosecutor stated[4]:
Ladies and gentlemen, let me tell you about one man’s words: “Yes. But I’m not going to admit it. You’re going to have to prove it.”
Those are the words of a guilty man. Defiant, arrogant, and unrepentant. Cocksure and confident that he would never be seated in a courtroom like he is here today. Confident that the crime that he committed was never going to be discovered. And he was confident, ladies and gentlemen, and he was defiant and he was cocksure because he was able to pick the participants in this conspiracy, because he was able to pick the members that he committed this crime with, because the people that he committed this crime with were his fellow Klansmen, his father, his brother, his life-long family friend. And he was confident that none of them were ever going to come in and tell ladies and gentlemen of a jury like yourselves what he had done.
And he knew something else too back when he made that statement to the FBI in 1964. He knew that local law enforcement, at least some members of it, in Franklin County, Mississippi, were a help to this conspiracy, not a hindrance.
Thus, the jury was urged to regard Seale’s custodial confession as the most telling statement any person made at or around the time of the kidnap-murders.
The prosecutor then discussed other relevant evidence, mainly the testimony of Charles Edwards. Returning to the con *503 fession, the prosecutor implied that it was given without coercion or physical intimidation:
But now I want to go back to the beginning, because there is still one other very important corroboration for the testimony of Charles Edwards: ‘Yes, but I’m not going to admit it. You’re going to have to prove it.” The uncontroverted testimony from Agent Putz is that this is the testimony — that was the statement made by this defendant to two FBI agents back in 1964, a statement made approximately 30 minutes after he was arrested, while he was in the backseat with those two agents.
You saw Agent Putz on the stand. You had an opportunity to evaluate his credibility. You ask yourself whether or not that struck you as an agent who beat a confession out of this man.
A few minutes later, the prosecutor again beseeched the jury to convict Seale on the weight of the confession:
I submit to you also that the very defiant, arrogant, confrontational statement that the defendant made undercuts any argument as to its voluntariness or to its credibility.
And make no mistake, ladies and gentlemen, this was a confession. Agent Putz was there. He told you the defendant’s demeanor. He told you what happened in that car. He knows a confession when he hears one .... [Seale] was basically confronted with the fact that he had committed this murder, and his statement in response was “yes.”
This man issued a challenge 43 years ago, back when he was a young man, back when he was confident that nothing was going to happen to him for his participation in this crime. He thought that his secret was safe and that the silence was going to be permanent. But we have finally taken up that challenge here in court during the last two weeks.
Shortly thereafter, the prosecutor concluded rebuttal. The jury found Seale guilty on all counts.
D.
In the opening brief in this court, Seale’s counsel stated: “The alleged confession occurred before the Supreme Court decided Miranda. This Court must therefore rely on pr e-Miranda case law to determine the applicable test for a claim of involuntary confession.” Seale’s brief did not cite Johnson v. New Jersey. In its response brief, the government admitted for the first time that Miranda should have applied to Seale’s trial. The government then asserted that because Seale’s counsel “affirmatively argued to the district court, and continues to argue on appeal, that the admissibility of his 1964 statement is governed by pr e-Miranda standards of voluntariness, the issue of whether his statement should have been excluded under Miranda is waived.” In his reply brief, Seale argued that he adequately raised the issue whether the statement should be suppressed, and that a collective mistake on the part of the prosecution, defense, and district court should not deprive Seale of the benefit of the proper legal standard.
III.
In my view, Seale has preserved the argument that the lack of Miranda warnings rendered his confession inadmissible. Alternatively, if review is for plain error, I believe such is present. In either case, I would reverse.
A.
The panel majority first acknowledges that the facts in this case are “egregious.” I agree, but I part ways where the panel *504 majority lays all responsibility at Seale’s feet for his counsel’s errors. The majority considers this an instance “where an appellant affirmatively misleads the court regarding the legal standard that controls the objection.” There are two problems with this statement. The first is legal. Miranda did not overrule or supplant the voluntariness test. Miranda is grounded in the Fifth Amendment’s guarantee against compelled self-incrimination. The Miranda rule supplements, or subsumes in part, the voluntariness inquiry, which has its roots in due process. An unMirandized statement may be voluntary; conversely, an involuntary, coerced statement may follow a scrupulous recitation of the Miranda warnings. See Dickerson, 530 U.S. at 444, 120 S.Ct. 2326. Thus, the panel majority mistakenly treats pre-and post-Miranda paradigms as mutually exclusive.
Secondly, I do not think it proper to blame only Seale for the error. Seale’s counsel noted in the motion to suppress that, prior to giving the statement, Seale “had not been properly advised of his right to remain silent and his right to have an attorney appointed to represent him.” However, the government stated in opposition that, under Johnson v. New Jersey, the “Miranda decision does not apply retroactively.”[5] The government continued to unqualifiedly and vociferously urge this incorrect position until after Seale filed his opening brief in this Court. Had the government, Seale’s counsel, or the court read Johnson v. New Jersey, the falsity of the government’s statements would have, been immediately apparent. There was ample time to peruse Johnson v. New Jersey after the government cited the decision in its response to Seale’s motion. The government cited Johnson v. New Jersey again during oral argument for the motion to suppress, and the district court did not rule on the motion for two more days. I consider this deficient lawyering, for which Seale’s counsel is primarily responsible. However, the district court had to accept the government’s representations at face value in order to deny the motion to suppress. The panel majority ignores the government’s role in misleading the court and only concludes that “Seale’s affirmative misrepresentation of the correct standard did more than fail to alert the court to the proper standard, it affirmatively led the court into error.” Respectfully, I submit that this assertion by the panel majority distorts critical facts.
B.
Whether a district court grants or denies a motion to exclude or suppress evidence, we review factual findings for clear error and conclusions of law de novo. United States v. Pope, 467 F.3d 912, 915-16 (5th Cir.2006) (citations omitted). To preserve error, Federal Rule of Evidence 103(a)(1) requires that a litigant first file a motion which states “the specific ground of objection, if the specific ground was not apparent from the context.” To be reviewable, the error must affect a substantial right of the party. Id. “Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.” Fed.R.Evid. 103(d).
*505 “In determining the sufficiency of objections we apply ‘the general principle that an objection which is ample and timely to bring the alleged ... error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to ... preserve the claim for review.’ ” United States v. Williams, 985 F.2d 749, 755 (5th Cir.1993) (ellipses in original) (quoting Osborne v. Ohio, 495 U.S. 103, 125, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990)); see also Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). If an argument is not raised in a motion to suppress, it is deemed forfeited, and we review for plain error. See United States v. Baker, 538 F.3d 324, 329 (5th Cir.2008).[6] However, where good cause is shown, the “court may grant relief from the waiver.” Fed.R.CrimP. 12(e); cf. United States v. Hall, 565 F.2d 917, 920 (5th Cir.1978) (holding that “district court’s desire to avoid penalizing a criminal defendant for the inadvertence of his attorney constitutes ‘cause’ ”).
Seale never affirmatively argued that Miranda applied to his case. However, he asserted that he had not been advised of his right to remain silent or have counsel appointed. These factual allegations should have suggested to the court that the absence of prophylactic warnings in conformance with Miranda was relevant to this case. In Douglas, trial counsel objected that the reading of a confession by the defendant’s confederate was “not subject to cross-examination.” 380 U.S. at 421 n. 4, 85 S.Ct. 1074. The Court held that this sufficed to preserve a Confrontation Clause challenge. Id. at 423, 85 S.Ct. 1074. Counsel need not provide crafted legal arguments, but rather, must notify the court of the nature of the objections. See United States v. Harrelson, 705 F.2d 733, 738 (5th Cir.1983) (“Hearings on motions to suppress are ... designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought.”); United States v. Renteria, 625 F.2d 1279, 1283 (5th Cir.1980) (“Involuntary confessions, about which the court is alerted, should not be admitted in evidence merely because of defense counsel’s oversight or incompetence.”). I believe that Seale’s motion to suppress adequately stated the factual basis of a Miranda objection. Our appellate review should not be for plain error, but rather, whether the error was harmless beyond a reasonable doubt. See United States v. Joseph, 333 F.3d 587, 592 (5th Cir.2003).[7]
This case differs significantly from those cited in the panel majority’s opinion. United States v. Mejia, 844 F.2d 209 (5th Cir.1988), involved counsel’s failure to articulate a specific hearsay exception at trial; we held that the appellant could not argue the exception on appeal. Id. at 214-15. Alternatively, we held that the error, if any, was harmless. Id. at 215. Notably, Mejia did not involve an error of constitutional gravity or a misunderstanding of law perpetuated by the government.[8] Unlike *506 the trial court in Mejia, the district court considering Seale’s motion to suppress had ample time to investigate the authorities cited by the parties, including Johnson v. New Jersey, which the government relied on for the non-applicability of Miranda. The panel majority also points to United States v. O’Brien, 435 F.3d 36, 38-39 (1st Cir.2006), where counsel failed to object on the basis of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), after the prosecutor wrongly made comments about the defendant’s silence. Counsel objected on an incorrect basis, and a Doyle-based “objection was not obvious from context,” which led the court to review for plain error only. 435 F.3d at 39. Ironically, the court reasoned that while any lawyer worth his salt would know of the Miranda rule, “many lawyers have never heard of Doyle.” Id. Like Mejia and unlike the present case, O’Brien involves a ruling made on the spot during trial, and nothing suggests that affirmative misstatements of the law by the government precipitated the court’s error. In sum, the present case is entirely different from the authorities marshaled by the panel majority.
Specificity in objections is desirable, but when it comes to basic constitutional guarantees, courts must hesitate before exalting form over substance. I have found no case, and the panel majority cites none, where the court holds a defendant entirely accountable for an error caused by a confluence of the government’s misstatements and defense counsel’s inadvertence. Following the government’s citation of Johnson v. New Jersey for the unqualified but erroneous position that Miranda had no application to Seale’s trial whatsoever, it appears that nobody looked into the issue. The judge was not asked to rule on the motion in the midst of trial, and two days separated the testimony of Special Agent Putz, and arguments by counsel, from the court’s denial of Seale’s motion. Error was predicated not by a dearth of factual averments, nor by evidence insufficient to show that Seale did not receive Miranda warnings (clearly, the evidence showed that he did not). Error was grounded in a pure misunderstanding of law, which is reviewed de novo. See Pope, 467 F.3d at 915-16.
If error was preserved, there is no question but that Seale’s custodial confession was improperly admitted. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602. The government has not shown that the error was harmless beyond a reasonable doubt. See Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Joseph, 333 F.3d at 592. Without the confession, the jury would have had to rely on the testimony of Charles Edwards. Edwards admitted that he had lied about the details of the crime for over forty years. He continued to deny knowledge concerning the deaths of Dee and Moore after he was immunized and compelled to testify at trial. Edwards stated that he personally took part in inveigling Dee and Moore, and beating them to find out where weapons were stored. However, Edwards’s first-, hand knowledge ceased there. Everything from that point forward came from a statement that Seale made some time after the acts alleged. Edwards only revealed the details of this statement when the government threatened to question his family and charge him with perjury. On the whole, Edwards’s testimony presented the jury with a narrative that was rife with inconsistencies, gaps, and credibility problems. Without Seale’s confession, only circumstantial evidence supported Edwards’s version of the events. No physical or forensic evidence connected Seale to the killings.
*507 The government emphasized Seale’s confession repeatedly during its closing argument as the boastful challenge of a “defiant, arrogant, and unrepentant” murderer. It is almost certain that this confession affected the jury’s deliberations and the outcome of proceedings. See Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (“The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.”) (emphasis in original). We cannot know whether the jury considered Seale’s confession relevant, or mere surplusage in light of other evidence. I would reverse.
C.
Even if plain error is the appropriate standard, see United States v. Olano, 507 U.S. 725, 733-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), I believe such is present. The burden is on Seale to meet the standard. Id. at 734-35, 113 S.Ct. 1770. As the panel majority acknowledges, Seale easily meets the first two elements: “error” that is “plain” or “obvious.” Id. at 734, 113 S.Ct. 1770. The district court committed error by allowing Seale’s confession to be admitted after Miranda became applicable to all trials. The error was obvious in light of Johnson v. New Jersey. The panel majority waffles on the third prong, whether the error affected Seale’s substantial rights. See id. at 735, 113 S.Ct. 1770. I believe that the erroneous admission of the confession was highly prejudicial. There is no doubt in my mind that the confession, which the government relied on heavily during closing arguments, “affected the outcome of the district court proceedings.” See id. at 734, 113 S.Ct. 1770. And unlike the panel majority, I believe that the court should exercise its discretion to correct the error because it “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” See id. at 736, 113 S.Ct. 1770 (alterations in original; quotation omitted).
I first point out that our Court has previously examined plain error in this context. In Garay v. United States, 399 F.2d 696 (5th Cir.1968) (per curiam), defendant-appellant Garay was interrogated before Miranda was decided, and thus was not given Miranda warnings. Id. at 696.
Appellant was implicated originally by co-defendant and government witness Villareal. Appellant and Villareal had just been on a trip to Mexico together. Villareal was found in possession of narcotics, and told government officers he was carrying them as agent of appellant and was to deliver them to appellant in Texas. No delivery was shown. Villa-real’s statements were used to elicit admissions from appellant. Then at the trial Villareal recanted his statements implicating appellant and testified that he was attempting, in desperation and confusion, to shift blame from himself to appellant.
Id. We reasoned that Garay’s improperly obtained confession was of “great importance in the totality of evidence.” Id. Trial was held a few weeks after Miranda was issued; consequently, we held that admission of the statement into evidence was “plain error affecting substantial rights,” notwithstanding trial counsel’s failure to object. Id. We therefore vacated the conviction. Id. The panel majority has failed to cite, much less distinguish Garay.
The panel majority has assumed, but not decided, that the admission of Seale’s confession was prejudicial. The confession was one of two pieces of evidence connecting Seale to the murders. Without it, the *508 jury would have had to rely solely on forty-year-old hearsay from Charles Edwards, a co-conspirator and fellow Klan member who admittedly lied about the crime for most of his life. Edwards continued to change his story even after the government granted him immunity and compelled him to testify. Thus, the evidence of Seale’s role in the death of Dee and Moore can hardly be considered overwhelming or uncontroverted. The confession was “of great importance in the totality of evidence;” its admission was highly prejudicial. See id.
The panel majority concludes that even if the error prejudiced Seale, the court should not remedy such error pursuant to its discretion under the fourth prong of plain-error analysis. It cites only Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). There, the Court reasoned that the failure to submit “materiality” in a perjury prosecution to the jury, as opposed to the judge, was plain error. Id. at 467-68, 117 S.Ct. 1544. This was error only due to an intervening Supreme Court decision[9]; nevertheless, the Court reasoned that the plainness of error may be assessed at the time of appeal. Id. at 468, 117 S.Ct. 1544. The Court assumed that the error affected substantial rights, but declined to correct it because the evidence was “overwhelming:” materiality was “essentially uncontroverted at trial and has remained so on appeal.” Id. at 469-70, 117 S.Ct. 1544. In light of overwhelming evidence, the Court reasoned that affirming would cause no miscarriage of justice. Rather, reversing the conviction on the basis of such a technicality would cause greater damage to the reputation of judicial proceedings. Id. at 470, 117 S.Ct. 1544.[10]
I do not believe that Johnson v. United States is helpful to the issue before this panel. It concerned a matter which was never contested by the litigants, was manifest from the trial record, and only became a viable issue post-trial. In such circumstances, reversal based upon the fortuitous issuance of new Supreme Court authority seems a windfall to an undeserving litigant. If evidence to fill a gap created by a technical deficiency is overwhelming and uncontroverted in the first instance, and will remain so upon remand, a new trial is a wasteful formality, which might indeed rightly stoke public ire. See Johnson v. United States, 520 U.S. at 470, 117 S.Ct. 1544; Cotton, 535 U.S. at 632-33, 122 S.Ct. 1781.
In my view, Seale’s ease could not be more factually distinct from Johnson v. United States or Cotton. The admissibility of Seale’s confession was contested from the outset. Aside from the prominent role the confession played in securing guilty verdicts, it bears emphasizing that it was *509 admitted in clear derogation of Seale’s Fifth Amendment privilege against compelled self-incrimination. The Miranda Court deemed this privilege the “essential mainstay of our adversary system.” 384 U.S. at 460, 86 S.Ct. 1602. From and after Dickerson, see 530 U.S. at 444, 120 S.Ct. 2326, it is beyond doubt that the Miranda warnings are of constitutional provenance. We must therefore be especially reticent to overlook errors of this magnitude. Cf. Olano, 507 U.S. at 735, 113 S.Ct. 1770. The error did not arise due to a new decision; it pre-dated Seale’s trial by at least forty years. While such timing is not relevant under the second prong of the plain-error test, see Johnson v. United States, 520 U.S. at 468, 117 S.Ct. 1544, it is worth weighing when we consider the effect of a pure error of law on the “fairness, integrity, or public reputation of judicial proceedings,” see Olano, 507 U.S. at 736, 113 S.Ct. 1770. The panel majority cites no case from this circuit, and I have found none, which affirms a conviction after finding that the district court committed a plain, prejudicial Miranda error.
The panel majority makes virtually no effort to liken this case to Johnson v. United States; it merely cites the case as an example of an affirmance based on the fourth prong of plain error. One would be hard-pressed to glean how exactly the majority exercised its discretion to disregard the error. The majority states it is “satisfied that the Government presented a strong case of guilt.” Additionally, “[wjhile the defendant’s statement may have been helpful to the Government, it was certainly not the centerpiece of its ease.” With due respect, I take a different view of the evidence and the law. The remaining evidence discussed by the panel majority either corroborates Seale’s confession or Edwards’s testimony. The jury heard details about the recovery of the victims’ remains, that the Roxie Baptist Church was searched for guns, and that Seale belonged to the KKK. But this evidence simply does not place Seale at the scene of the murders. Moreover, our job is not merely to excise improperly admitted evidence and ask whether the case for guilt is tenable. In my view, this displaces the role of a properly informed jury. I disagree with the implication that, so long as the appellate court feels that the remaining, properly admitted evidence presents “a strong case of guilt,” it may overlook the deprivation of virtually any substantial right. This is supported by neither the letter nor the policy behind the Supreme Court’s plain-error jurisprudence. See Roger J. Traynor, The Riddle of Harmless Error 50 (1970).[11]
*510 The majority also indicates that it declines to correct the error in part because Seale’s counsel was complicit in arguing the incorrect legal standard. It is true that “Seale’s counsel had the primary responsibility of marshaling the facts and law” in support of his motion to suppress. However, as I discuss above, Seale’s original motion put the district court on notice of the lack of the proper warnings to Seale concerning his right against compelled self-incrimination. I reiterate that the government first (wrongly) cited Johnson v. New Jersey. From the sequence of events, one might conclude that the government took a hard line in stating repeatedly and unequivocally that Miranda had no applicability to this ease. Then, after obtaining a conviction and allowing Seale’s counsel to urge a misbegotten legal theory in its opening brief, the government acknowledged that it had been wrong all along. I personally impute no malice to the government. However, to condone what objectively looks like legerdemain is to turn the rule of forfeiture and the plain-error standard from doctrines which uphold the administration of justice into tools for rubber-stamping shaky convictions. It is the government’s conduct in this case which more resembles the “sandbagging” that plain error review is intended to prevent. See Puckett v. United States, — U.S. -, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009) (citations and quotations omitted). In light of these facts, I disagree that it would “bestir[ ] the public to ridicule” the judicial system to require a new trial attendant with the basic guarantees that the Constitution mandates.[12]
I feel that the panel majority has not conducted the “case-specific and fact-intensive” review that is required to deny relief under the fourth prong of plain-error review. See Puckett, 129 S.Ct. at 1433. Indeed, one must wonder whether any plain error will be corrected after this decision. If an immensely prejudicial, purely legal error affecting a fundamental constitutional right need not be fixed, what error should be?
IV.
The clumsy handling of the Miranda issue in this case by all involved dramatically indicates one of the sound policy reasons favoring repose in statutes of limitations on criminal charges. At the time of Miranda (and Johnson v. New Jersey) in 1966, it is likely that few, if any, of the attorneys involved in this case were licensed or practicing. They would have no reason to be personally familiar with the dramatic effects of Miranda and Johnson v. New Jersey at the time those opinions were issued by the Supreme Court. Similarly, the special circumstance here, i.e., the confession occurring before Miranda but trial occurring after Miranda, was a circumstance that would have diminished in frequency with the passage of time. If the five-year statute of limitations for non-capital offenses was most frequently applied to criminal charges in the 1960’s and *511 1970’s, see 28 U.S.C. § 3282, the occasions on which a pre-1966, un-Mirandized confession would be in issue would drop off significantly by 1971. I can understand, therefore, that in Seale’s indictment and trial, which occurred over forty years after Miranda and Seale’s confession to FBI agents, a new generation of lawyers might never have had an occasion to be exposed to the effect of Johnson v. New Jersey on the applicability of the Miranda rule. These circumstances should not excuse a grievous misinterpretation of Johnson v. New Jersey, which led the district court into error, but rather, should compel us to demand more exacting application of the controlling law.
Our treatment of those accused of the most heinous and despicable acts is a measure by which we mark our adherence to the rule of law. Today the panel majority affirms a conviction which was derived from a trial lacking one of the most important constitutional guarantees afforded to our citizens. On the basis of the Miranda issue, and subject to my comments about the statute of limitations, I believe that this conviction cannot stand. Respectfully, I dissent.

.In Dickerson, the Court considered whether 18 U.S.C. § 3501 legislatively overruled Miranda. Congress enacted § 3501 after Miranda to make voluntariness the controlling standard for the admissibility of confessions. "The Court reasoned that, because Miranda was constitutionally based, Miranda's requirements could not be avoided by statutorily allowing the admission of unwarned statements.” United States v. Guanespen-Portillo, 514 F.3d 393, 400 (5th Cir.2008) (citing Dickerson, 530 U.S. at 444, 120 S.Ct. 2326).

. From the time of indictment to the present, the Federal Public Defender for the Southern District of Mississippi has been Seale's appointed counsel.

. The murder charges against Seale under state law were later dismissed, ostensibly for lack of evidence.

. The following passages are found in Volume 11 of the trial transcripts.

. The government was, at best, half-right. Johnson v. New Jersey indicated that Miranda did not apply “retroactively” to convictions which had become final, nor to cases on direct appeal, as of June 13, 1966. 384 U.S. at 730-34, 86 S.Ct. 1772; see also Frazier, 394 U.S. at 738, 89 S.Ct. 1420 (same). However, even a cursory review of Johnson v. New Jersey permits but one reading: the Miranda rule would apply "to persons whose trials had not begun as of June 13, 1966.” 384 U.S. at 734, 86 S.Ct. 1772.

.There is conflicting authority from other circuits concerning whether arguments not raised are truly "waived” — and are thus unreviewable — or merely "forfeited,” and therefore subject to plain-error review. See id. at 328-29 & nn. 1-6, 86 S.Ct. 1772. Our practice has been to treat such arguments as forfeited, and thus to review for plain error. See id. at 329, 86 S.Ct. 1772.

. Even if the objection was inadequate, the government’s failure to recant its misstatement of law until this appeal makes it suitable to notice the error in this tribunal. Cf. United States v. Cathey, 591 F.2d 268, 271 n. 1 (5th Cir.1979) (finding good cause for delay in motion to dismiss indictment where basis for motion was not knowable until mid-trial).

. The panel majority also cites United States v. Sims, 617 F.2d 1371, 1377 (9th Cir.1980), *506 which, like Mejia, involves hearsay exceptions which were never argued in the trial court.

. See United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

. The Court used identical reasoning in United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). There, defendants were convicted of drug offenses and sentenced to terms in excess of twenty years' imprisonment based on judge-made findings that the drug quantities triggered enhanced penalties. Id. at 627-28, 122 S.Ct. 1781. After trial but before appeal, the Supreme Court issued Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”). The Cotton Court held that failure to submit drug quantities to the jury was plain error under Apprendi, but, even assuming that it prejudiced defendants, the Court did not need to correct the error because evidence of drug quantities was "overwhelming” and "essentially uncontroverted.” 535 U.S. at 632-33, 122 S.Ct. 1781.

. Justice Traynor’s commentary on the effect of reversing non-prejudicial error was cited by the Supreme Court in Johnson v. United States, 520 U.S. at 470, 117 S.Ct. 1544, and echoed by the panel majority in this case for the following: "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.” I find the full passage from which the quote is taken instructive:
Appellate judges, persuaded by the record that the defendant committed some crime, are often reluctant to open the way to a new trial, given not only the risk of draining judicial resources but also the risk that a guilty defendant may go free. The very reluctance of judges to confront such risks, however, serves to condone errors that may affect a judgment and thus engenders a still more serious risk, the risk of impairing the integrity of appellate review. Nothing is gained by running such a risk and much is lost. If appellate judges forthrightly opened the way to a new trial whenever a judgment was contaminated by error, there would be a cleansing effect on the trial process. A sharp appellate watch would in the long run deter error at the outset, thereby lessening the need of appeal and retrials. Like all too easy affirmance, all too ready reversal is also inimical to the judicial process. Again, nothing is gained from such *510 an extreme, and much is lost. Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.
Traynor, supra, at 50. Thus, Justice Traynor cautioned against resort to extremes: mechanical affirmance or reversal without careful consideration of the prejudicial effect of an error. In my view, the first paragraph cited above aptly describes the panel majority’s misguided treatment of the error in this case.

. The possibility that the public would disapprove because guilty and innocent alike would receive new trials, or in some cases, be set free, was not apparently of overriding concern to the Supreme Court when it decided Miranda. Indeed, despite reversing his convictions, the Court never showed any doubt that Ernesto Miranda had committed kidnaping and rape. See 384 U.S. at 492 & n. 66, 86 S.Ct. 1602.